Pansy F. RICHARDSON, Donald B. Richardson, Patrick S. Richardson, Joseph S. Richardson, Larry S. Richardson, and Carla Richardson, Plaintiffs-Appellants-Cross Appellees,

v.

FOREMOST INSURANCE COMPANY, Shirley Eliser and June G. Allen, Defendants-Appellees,

June G. Allen, Defendant-Appellee-Cross Appellant.

No. 79-2542.

United States Court of Appeals, Fifth Circuit.

April 2, 1981.

Rehearing and Rehearing En Banc Denied May 4, 1981.

Roy Maughan, Dorsey C. Martin, III, Baton Rouge, La., for plaintiffs-appellants-cross appellees.

Franklin, Moore & Walsh, Arthur H. Andrews, Baton Rouge, La., for Foremost Ins. Co. and Shirley Eliser.

Talbot, Sotile, Carmouche, Waguespack & Marchand, Victor L. Marcello, Donaldsonville, La., for June G. Allen.

Before THORNBERRY, ANDERSON and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

This is an appeal from the dismissal of plaintiffs' complaint on the ground that it did not state a cause of action that was within the admiralty jurisdiction of the lower court. The incident giving rise to the complaint involved a collision between two pleasure boats on the upper reaches of the Amite River. The district court, 470 F.Supp. 699, reasoned that the facts of the case did not present a sufficient relationship to traditional maritime activity to warrant the extension of admiralty jurisdiction to this litigation. While there is much logic and good sound policy reasons that support the district court's holding, we regretfully conclude that precedent does not permit us to take this far-reaching step. Additionally, there is uniformity in the present rule that admiralty jurisdiction extends to all accidents occurring between surface vessels on navigable waters. The benefits derived from this certainty override the policy considerations advanced by the appellees in support of the district court's ruling.

The accident giving rise to this litigation was between one pleasure boat being used to pull a skier on a "zip sled" and a pleasure boat used for sportfishing but under way at the time. Neither boat had ever been involved in commercial maritime activity. There was no involvement at the time of the accident of any buoy, barge, or underwater obstruction.

The district court concluded that there was a lack of admiralty jurisdiction and defined the issue as follows:

In short, this case squarely presents the factual issue of whether or not "admiralty jurisdiction" must be extended to an accident occurring between two pleasure boats in the purest sense of the word, and in which there is absolutely no "commercial" or "traditional maritime activity" whatsoever involved.

The district court referred to the views of certain text writers in the field [1] and then examined and relied on three cases that unquestionably control the decision of this case, those being *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), *Kelly v. Smith,* 485 F.2d 520 (5th Cir. 1973), and *Peytavin v. Government Employees Insurance Co.,* 453 F.2d 1121 (5th Cir. 1972).

Those three cases very simply may be said to hold that admiralty jurisdiction requires more than the occurrence of the tort on navigable waters—that additionally there must be a significant relationship between the wrong and traditional maritime activity. Thus, we agree with the district court in the statement of the rule. We differ from the district court in the application of the rule to the facts in this case.

---

1. Gilmore and Black, *The Law of Admiralty,* 2d ed., 1975; *Benedict on Admiralty,* 7th ed. (Revised); and, Boland and Dodd, *Recent Developments in the Law of Maritime Torts* (1972).

We hold that two boats, regardless of their intended use, purpose, size, and activity, are engaged in traditional maritime activity when a collision between them occurs on navigable waters. We say this because boats, regardless of their size, purpose, and activity, are governed by the same "Rules of the Road" as the largest seagoing vessel when those boats are traversing navigable waters. As such, the owners and operators of the vessels are bound by those rules, and their negligent operation or absence of negligent operation is so governed. We do not find that any of the three cases which are our guideposts require that the maritime activity be an exclusively commercial one. We sympathize with those writers and scholars who strongly believe that admiralty jurisdiction should be limited to only litigation involving commercial activity on navigable waters. We recognize that the Fourth Circuit in *Crosson v. Vance*, 484 F.2d 840 (4th Cir. 1973), holds otherwise than we do here. We note that the Eighth Circuit in *St. Hilaire Moye v. Henderson*, 496 F.2d 973 (8th Cir. 1974), has held that admiralty jurisdiction does extend to an accident identical to this. The Seventh Circuit in *Chapman v. United States*, 575 F.2d 147 (7th Cir. 1978), held that admiralty jurisdiction did not extend in that case because the once navigable waterway is now used only for recreational activities. In footnote 10 the court said: "The reach of admiralty jurisdiction over pleasure boat mishaps occurring in navigable waters used for commercial activity is, of course, not before us." 575 F.2d at 150, n. 10.

Our decision in this case is strongly influenced by the holding in *Kelly v. Smith, supra*, in which this court stated that "[a]dmiralty has traditionally been concerned with furnishing remedies for those injured while traveling navigable waters." *Id.* at 526. That case dealt with an unusual factual situation where gunfire was exchanged between occupants of a pleasure boat on the Mississippi River and persons standing on an island. The court placed emphasis on the danger presented by gunfire being directed at a vessel, although a small one, on a major commercial artery. We note a strong dissent in that case by Judge Morgan but believe that the facts in this case are more closely related to traditional maritime activities than those in the *Kelly* case because the rules governing navigation of all vessels govern the operation of the boats involved in the collision in this case.

If we were to hold that admiralty jurisdiction did not reach this litigation, we would be injecting an uncertainty that would plague litigants and the courts. For example, in the case of non-commercial navigators traveling on navigable waters that are shared by more than one state, their obligations and duties would be subject to differing standards depending on their precise location within the territorial jurisdiction of one state or another. Moreover, non-commercial navigators everywhere would be subject to yet another conflict in applicable standards of behavior depending upon whether their activity later turns out to be sufficiently "commercial," and, therefore, solely a matter for the states. Only a uniform admiralty law, extending to non-commercial as well as commercial navigators, avoids these problems.

We note additionally from the record that the place where the accident occurred is seldom, if ever, used for commercial activity. That does not cause us to vary from our holding. The waterway is not landlocked. It would be introducing another note of uncertainty to hold that admiralty jurisdiction extends only to a stretch of navigable water that presently functions as a commercial artery. Jurisdiction should be as readily ascertainable as courts can make it. If the waterway is capable of being used in commerce, that is a sufficient threshold to invoke admiralty jurisdiction.

We remand to the district court for consideration of the case on the merits.

REVERSED and REMANDED.

THORNBERRY, Circuit Judge, concurring in part; dissenting in part:

Admiralty jurisdiction does not encompass actions in tort unless the wrong occurs

on navigable waters and bears a significant relationship to traditional maritime activity. *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); *Kelly v. Smith,* 485 F.2d 520 (5th Cir. 1973). The district court in this instance found it unnecessary to reach the navigability issue, since it found the "traditional maritime activity" criterion dispositive of the case. Although I am sympathetic with that court's conclusion that pleasure boating is not the stuff of which admiralty jurisdiction should be made, the question is no longer open for us to decide, since this Court has held that noncommercial activity does fall within the ambit of admiralty jurisdiction. *Kelly, supra.*

It is important to note, however, that the *Kelly* decision preserved a link (though certainly a weak one) with commercial activity that the majority in this case severs completely. The Court justified its decision in *Kelly* as follows:

> Rifle fire directed at a vessel, albeit a small one, *on a major commercial artery,* and injuring the pilot, presents sufficient danger *to maritime commerce* for the federal courts of admiralty to assume jurisdiction and to furnish remedies to those aboard the vessel and injured by that conduct.

*Id.* at 526 (emphasis added). In contrast, there is no hint in the case before us that the tort created a similar "danger to maritime commerce" and thus no trace of *any* federal interest at stake in this case. Because I believe that the desire for certainty cannot alone justify the assumption of federal control over matters of purely local concern, I would remand for a finding on whether the stretch of river where the accident occurred functions as an artery of commerce. *See Chapman v. United States,* 575 F.2d 147, 151 (7th Cir. 1978) (en banc); *Adams v. Montana Power Co.,* 528 F.2d 437 (9th Cir. 1975). Since the majority finds it unnecessary to answer this question, I respectfully dissent.