Richard A. **RESPESS**

v.

**UNITED STATES of America.**

Civ. A. No. 82–0534.

United States District Court, E.D. Louisiana.

May 25, 1984.

Philip E. Henderson, Houma, La., for plaintiff.

Paul A. Winick, Asst. U.S. Atty., New Orleans, La., Rosemary Denson, Torts Branch-Civil Div., Dept. of Justice, Washington, D.C., for defendant.

## OPINION

McNAMARA, District Judge.

This matter is before the Court on the cross-motions for summary judgment of Plaintiffs, Richard Respess and Alice Attaldo, and the Defendant, the United States. The motions address several issues, the most significant being the nature of the court's jurisdiction. After oral argument, the matter was taken under advisement pending the submission of further discovery on the jurisdictional issue. The parties have submitted that discovery and the jurisdictional issue is now ripe for resolution on the merits.

This litigation arises out of a pleasure boat accident. The Plaintiffs were passengers in a 17-foot outboard boat and were injured when the boat collided with a tree branch hanging over the "Cross-cut" Canal in St. Charles Parish, Louisiana. The Cross-cut Canal is part of a man-made waterway which empties into Lake Ponchartrain and is actually located in the Bonnet Carre' Spillway. The Spillway is owned, maintained and operated by the government through the U.S. Army Corps of Engineers as a flood control structure. The government also allows the waterways within the Spillway to be used as a public recreational boating area. Two boat launches, neither of which are operated by the government, service the area.

If this matter is within the court's admiralty jurisdiction, the Plaintiffs' remedy against the government for an alleged failure to properly maintain the waterway lies under the Suits in Admiralty Act, 46 U.S.C. § 742. *See Canadian Pacific (Bermuda) Ltd. v. United States*, 534 F.2d 1165, *rehearing en banc denied*, 539 F.2d 710 (5th Cir.1976). If the court is without admiralty jurisdiction, the appropriate remedy is the Federal Tort Claims Act, 28 U.S.C. § 2674, which would call for the application of Lou-

isiana law in this instance. *Richards v. United States*, 369 US 1, 9, 82 S.Ct. 585, 590, 7 L.Ed.2d 492 (1962).[1]

■ The determination of admiralty jurisdiction over torts is a two-fold conjunctive inquiry, referred to as the "locality-plus" test.[2] Initially, the tort must occur on "navigable" waters. Secondly, the tort must bear a significant relationship to traditional maritime activity. *Richardson v. Foremost Insurance Co.*, 641 F.2d 314, 315 (5th Cir.1981), *aff'd*, 457 U.S. 668, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982), *rehearing denied*, 459 U.S. 899, 103 S.Ct. 198, 74 L.Ed.2d 160 (1982); *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972).

## NAVIGABLE WATERS

■ The thrust of the government's argument that the court is without admiralty jurisdiction is premised on its contention that the Cross-cut Canal is not a navigable waterway for jurisdictional purposes.

Over a century ago, the Supreme Court defined a navigable waterway in this fashion:

Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in which such commerce is conducted by water.

*The Daniel Ball*, 77 U.S. (10 Wall.) 557, 563, 19 L.Ed. 999 (1871). *See also* G. Gilmore & C. Black, *The Law of Admiralty* § 1–11 (2d Ed.1975). This test applies to artificial water bodies as well as natural. *Ex Parte Boyer*, 109 U.S. 629, 632, 3 S.Ct. 434, 435, 27 L.Ed. 1056 (1884); *Finneseth v. Carter*, 712 F.2d 1041, 1044 (6th Cir. 1983).

As mentioned earlier, the Cross-Cut Canal flows into Lake Pontchartrain, a large lake which is an arm of the Gulf of Mexico. Although the canal is wholly within Louisiana, it is part of a contiguous waterway which forms an interstate or foreign highway of water commerce. Gilmore & Black, *supra*. Such a waterway has been described as possessing an "interstate nexus." *Finneseth*, 712 F.2d at 1045. In this circuit, that fact alone is apparently sufficient to satisfy the "navigable waters" test.[3] In

---

1. The Federal Torts Claim Act and the Suits in Admiralty Act are mutually exclusive. 28 U.S.C. § 2680. The determination of the nature of jurisdiction and concomitantly, the substantive law that applies, is significant because of the uncertain impact of immunity provided to owners of recreational areas under Louisiana law. *See* La.R.S. 9:2791 & 2795.

2. Calamari, *The Wake of Executive Jet—A Major Wave or a Minor Ripple*, IV Maritime Lawyer 52 (1979).

3. The Sixth Circuit seems to regard the "navigable waters' inquiry as a two-prong test. First, the water must be *available* as an interstate highway of commerce, i.e., not be landlocked within one state, thus satisfying the "interstate nexus" test. Second, the water must be used or be susceptible of use for any trade or travel on water. This requirement apparently focuses on the inherent navigational limitations of the waterway, such as its depth, as opposed to political bounds. *Cf. Finneseth v. Carter*, 712 F.2d at 1044–45 (wherein an interstate lake was found navigable despite the lack of current commercial use). Although the Eighth Circuit also seems to regard the "navigable waters" inquiry as two-fold, it requires a showing of "contemporary navigability in fact", i.e., current commercial use as opposed to a mere susceptibility of commercial use. *Edwards v. Hurtel*, 717 F.2d 1204, 1205 (8th Cir.1983) (interstate lake currently used for recreation exclusively held *not* navigable). *Livingston v. United States*, 627 F.2d 165, 167 n. 2 & 170 (5th Cir.1980). *Livingston* relies on *Chapman v. United States*, 575 F.2d 147 (7th Cir.) (en banc), *cert. denied*, 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978), and *Adams v. Montana Power Co.*, 528 F.2d 437 (9th Cir.1975) in establishing the "contemporary

*Richardson,* the Fifth Circuit Court of Appeals declared the upper reaches of the Amite River to be a navigable waterway—despite its lack of commercial activity—solely on the basis that the river is not landlocked. The court explained:

> We note additionally from the record that the place where the accident occurred is seldom, if ever, used for commercial activity. That does not cause us to vary from our holding. The waterway is not landlocked. It would be introducing another note of uncertainty to hold that admiralty jurisdiction extends only to a stretch of navigable water that presently functions as a commercial artery. Jurisdiction should be as readily ascertainable as courts can make it. If the waterway is capable of being used in commerce, that is a sufficient threshold to invoke admiralty jurisdiction.

641 F.2d 316.[4]

Moreover, the evidence reflects that the Cross-Cut Canal is presently being used as a commercial artery. The parties have stipulated that licensed commercial fishermen traverse the Cross-Cut Canal to catch fish and crabs in the surrounding waters and Lake Pontchartrain. Major Charles Clark of the Enforcement Division of the Louisiana Department of Wildlife and Fisheries testified (via deposition) without contravention that the subject waterway was used extensively by commercial fishermen.

There can be no doubt that the Cross-Cut Canal "is susceptible of being used" as an interstate commercial artery within the definition of navigable waters set forth in *The Daniel Ball.*[5]

## PLEASURE BOATS AND MARITIME NEXUS

Having satisfied the first prong of the *Executive Jet* "locality-plus" test, it now is necessary to discern whether this pleasure boat allision bears a significant relationship to traditional maritime activity. *Executive Jet,* 409 U.S. at 268, 93 S.Ct. at 504. In this regard, the express holding of the Supreme Court in *Richardson* is instructive:

> In light of the need for uniform rules governing navigation, the potential impact on maritime commerce when two vessels collide on navigable waters, and the uncertainty and confusion that would necessarily accompany a jurisdictional test tied to the commercial use of a given boat, we hold that a complaint alleging a collision between two vessels on navigable waters properly states a claim within the admiralty jurisdiction of the federal courts.

*Richardson,* 102 S.Ct. at 2660.

The holding is particularly significant because *Richardson* involved a collision between pleasure boats. Although *Richardson* involved two vessels and the instant

navigability" rule. However, both *Adams* and *Chapman* involved reservoirs completely landlocked within one state. As pointed out in *Finneseth,* the reservoirs did not satisfy the "interstate nexus", notwithstanding the absence of commercial activity. 712 F.2d at 1044. *Cf. Smith v. Hustler, Inc.,* 514 F.Supp. 1265 (W.D. La.1981), discussed in note 6, *supra.*

**4.** Judge Thornberry, in dissent, stated that he would remand for a determination of whether the river at the accident site functions as an artery of commerce. *Richardson,* 641 F.2d at 317. The Supreme Court never addressed that specific issue in reaching its decision. Instead, the Court noted:

> The District Court assumed that the Amite River is navigable at the site of the collision. Although the issue is not free from doubt, it appears from the opinion and the disposition of the Court of Appeals that the court found that the river is navigable at this site although

seldom, if ever, used for commercial traffic. This opinion is premised on our understanding that the river at this point is navigable, see Brief for Petitioners 20, but we leave open the question whether petitioners have preserved the opportunity to argue this issue upon further development of facts in the District Court.

102 S.Ct. at 2656 n. 2.

**5.** No doubt, the commercial activity on the Cross-Cut Canal is not the type commonly envisioned in a maritime setting. *Cf. Smith v. Hustler, Inc.,* 514 F.Supp. at 1269. It is commercial activity, nonetheless and is indicative of the waterway's *susceptibility to interstate or foreign use* as required by the Fifth Circuit. *Richardson,* 641 F.2d at 316. In any event, I agree with Judge Lombard that it is futile to create a dichotomy between recreational and commercial activity. *See Kayfetz v. Walker,* 404 F.Supp. 75, 77 (D.Conn.1975).

case only a single vessel, I find the distinction to be one without a difference.[6] The rationale of *Richardson* is premised on the potential disruptive impact on maritime commerce caused by a vessel collision on navigable waters. 102 S.Ct. at 2659–60. That impact is not lessened by the fact that a single vessel is involved. Although a collision between vessels necessarily entails an application of the "salty" Rules of the Road, *Richardson*, 102 S.Ct. at 2659, the body of admiralty law is more than adequate to deal with the questions posed by these facts.

■ An application of the "maritime nexus"[7] factors identified in *Kelly v. Smith*, 485 F.2d 520 (5th Cir.1973) also militates in favor of upholding admiralty jurisdiction in this instance. Those factors, used to determine whether there is a significant relationship between the injury complained of and traditional maritime activity, are: 1) the function and roles of the parties; 2) the types of vehicles and instrumentalities involved; 3) causation and type of injury; and 4) the traditional concept of the role of admiralty law. *Id.* at 525.

■ This accident involved vessel passengers and not, for example, a water skier

or swimmer.[8] The vehicle involved is obviously a vessel. The accident was allegedly caused by a navigational obstruction, with which admiralty law has been traditionally concerned.[9]

## FLOOD CONTROL ACT

■ The government asserts that the Plaintiffs' claims are barred by the Flood Control Act, 33 U.S.C. § 702c, which provides in pertinent part:

No liability of any kind shall attach or rest upon the United States for any damage from or by floods or flood waters at any place.

Although the immunity afforded by this statute is broad, *Florida East Coast Railway Co. v. United States*, 519 F.2d 1184, 1192 (5th Cir.1975), the statute shields the United States from liability for damage caused by *flood waters*. Conversely, the damage in this case was allegedly caused by a failure to clear a waterway of a navigational hazard, and not flood waters.[10]

Accordingly, the court finds that 1) admiralty jurisdiction exists over the claim of Plaintiffs, and 2) the Flood Control Act is inapplicable. All other Motions are DENIED. A Telephone Conference shall be

---

**6.** Albeit without elaboration, Judge Stagg came to the same conclusion in *Smith v. Hustler, Inc. Smith* involved a boating accident on Lake Bistineau in which a passenger was thrown from pleasure boat and into the vessel's propeller. Judge Stagg stated that the second part of the *Executive Jet* test was "probably met" but noted the "arguable" distinction between *Richardson* and the facts of *Smith.* 514 F.Supp. at 1267 & n. 7. The *Smith* opinion emphasized the first part of the *Executive Jet* test, i.e., whether the tort occurred on "navigable waters." In holding that admiralty jurisdiction was not present, Judge Stagg found *Livingston, Chapman* and *Adams* to be persuasive. However, since the construction of a dam 40 years ago, Lake Bistineau is a completely landlocked lake within Louisiana's borders and thus fails to satisfy the "interstate nexus" regardless of the recreational nature of the waterway. *Smith*, 514 F.Supp. at 1269. Unlike today's decision, Judge Stagg placed no reliance on the Fifth Circuit's *Richardson* opinion as it relates to the "navigable waters" issue.

**7.** Calamari, *supra* at 70–73.

**8.** *See* Calamari, *supra,* at 77.

**9.** *Cf. Brown v. United States,* 403 F.Supp. 472 (C.D.Cal.1975) in *Brown,* the pilot of a pleasure sailing craft was killed when the vessel's aluminum mast struck a low-hanging power line. In upholding admiralty jurisdiction, the court reasoned: "The tort complained of is the negligent placing of a dangerous impediment to navigation. Such activity must be considered as having a significant relationship to traditional maritime activity within the meaning of (Executive Jet)." *Id.* at 474.

**10.** The government argues that the condition created by the overhanging tree limbs was caused by the opening of the Spillway because the rushing of the "flood waters" undermined the banks of the canal, thus causing the trees adjacent to the bank to droop over the canal's waters. However, the government's negligence, if any, will be premised on the failure to remove the trees from the canal's channel after an awareness of the dangerous condition presented, and not the opening of the Spillway in the first place.

held on June 26, 1984, at 3:00 p.m. for the purposes of selecting a date for the Trial and Pre-Trial Conference of this matter.