**Robert DUPLECHIN, III,**

v.

**PROFESSIONAL ASSOCIATION FOR DIVING INSTRUCTORS, Harry's Dive Shop, Warren Mermilliod, et al.**

**Civ. A. No. 86–3925.**

United States District Court, E.D. Louisiana.

July 28, 1987.

---

Vosbein, Delise and Amedee, Bobby J. Delise, Trial Atty., Patrick M. Amedee, New Orleans, La., for Robert Duplechin, III.

Gutierrez & Hand, Salvador E. Gutierrez, Jr., New Orleans, La., for Warren Mermilliod.

McGlinchey, Stafford, Mintz, Cellini & Lang, Peter L. Hilbert, Jr., New Orleans, La., for Harry's Dive Shop.

Porteous, Hainkel, Johnson & Sarpy, William A. Porteous, III, New Orleans, La., for Professional Ass'n of Diving Instructors.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on defendant Harry's Dive Shop's ("Harry's") motion for summary judgment. Robert Duplechin, III filed suit on September 10, 1986 against Harry's, the Professional Association of Diving Instructors ("PADI"), Warren Mermilliod, and three unnamed insurance companies alleging that as a result of the negligence of the three named defendants, he sustained permanent and disabling injuries in a May 30, 1985 scuba diving accident. Harry's brings this motion for summary judgment on the grounds that: 1) as a matter of law, Mr. Duplechin has no maritime cause of action against Harry's; 2) that his only claim is under Louisiana law; and, 3) that his Louisiana tort claim has prescribed by virtue of the provisions of Louisiana Civil Code Article 3492.

### FACTUAL SUMMARY

The following facts have been supplied in defendant's brief and statement of uncontested facts have been and adopted by plaintiff:

Plaintiff began recreational scuba diving in the summer of 1981 when friends showed him how to use scuba gear off the seawall of Lake Pontchartrain's southern shore. He enrolled in his first and only diving course at Harry's in February of 1982. The six week course offered by Harry's was a basic, entry level, open water scuba course. The instruction took place in an indoor pool and classroom located in a building in Metairie, Louisiana. Plaintiff contemplated using the skills taught at Harry's in such recreational diving activities as spear fishing and sight seeing. Plaintiff successfully completed the course at Harry's, passing a written examination at the conclusion of his instruction with a score of 89 out of a possible 100. He was subsequently certified by PADI in the spring of 1982.

In the summer of 1982, plaintiff began diving under platforms off the Louisiana

coast with a scuba diving club called "The Hell Divers." Plaintiff had been introduced to The Hell Divers through his friend, Warren Mermilliod. In November of 1982, plaintiff joined The Hell Divers as a dues paying member. In the summer of 1983 and 1984, plaintiff participated in several two-day spear fishing trips organized by The Hell Divers. Plaintiff took approximately three more trips in the summer of 1983 and three in the summer of 1984. In April, 1985, plaintiff took a trip to Gulf Shores, Alabama to dive off the wrecks near the coast.

Plaintiff's injuries were sustained during his second dive trip of 1985. On May 30, 1985, the Hell Divers hired two crew boats, the M/V NIGHTRIDER and the M/V MR. TOM, to take them to offshore platforms under which they would dive for fish. The group met the boats at the dock in Venice, Louisiana, and cruised out to the main pass area of the Gulf of Mexico. Plaintiff was aboard the M/V NIGHTRIDER.

Upon reaching its destination, the M/V NIGHTRIDER tied off to a platform in the Gulf of Mexico. On plaintiff's first dive, he jumped in, swam inside the legs of the platform, and descended to a depth of approximately 130 feet. He saw and shot a seven pound trigger fish with his spear gun and returned to the surface at the proper rate of ascent. After the remaining divers surfaced and came aboard, the boat left that platform and proceeded to another.

At the second platform, plaintiff dove to a depth of approximately 140 feet. He saw a large amberjack, swam down to about 170 feet and speared the fish. The fish weighed approximately 90 pounds, and it pulled plaintiff down to approximately 190 feet where he tied the spear line to a platform leg. Since the fish was still fighting capture, plaintiff decided to surface. After spending about 45 minutes on the surface, plaintiff again dove to approximately 190 feet, retrieved the fish, and once again surfaced.

About five minutes after his third return to the surface, plaintiff experienced pain in his lower back. Plaintiff layed on the deck in an attempt to ease what he thought was a pulled muscle but the pain spread to between his shoulder blades. As the pain worsened, plaintiff told the other members of the dive crew he could not get up; he was weak and wobbley and had to be helped into the cabin. About five to ten minutes later, he had a tingling sensation in his lower legs which gradually traveled up to his chest. As the tingling sensation travelled to his chest, it was followed by numbness.

Although plaintiff eventually got to a hospital on shore, it took nearly eight hours to arrive there and, by then, permanent damage had been done to his spine. Plaintiff remains a paraplegic to this day, partially paralyzed from the chest down.

In plaintiff's complaint, he alleges two separate causes of action. The first is designated under the General Maritime Law within the meaning Fed.R.Civ.P. 9(h) which states, in essence, that his accident of May 30, 1985, was due to the failure of Harry's to properly instruct him concerning the symptoms and treatment of decompression sickness (the bends). In his second cause of action, plaintiff reiterates all the allegations of his first cause except that he seeks remedy under Louisiana Civil Code provisions concerning offenses and quasi-offenses.

Defendant contends plaintiff has no maritime claim as plaintiff's allegations of improper instruction does not bear a significant relationship to traditional maritime activity; and two, because the accident occurred May 30, 1985 and this claim was not filed until September 10, 1986, plaintiff's tort action has prescribed. Plaintiff does not deny the general tort claim has prescribed, but contends Harry's negligent instructions in the area of scuba, decompression sickness, decompression theory and open water safety have a sufficient nexus to traditional maritime activity to constitute a maritime cause of action.

For the following reasons, the Court finds the actions and activities of plaintiff and defendant Harry's as they relate to the accident in question are not traditionally maritime.

## DISCUSSION

█ A tort claim brought under general maritime law must allege: 1) that the accident occurred on navigable waters; and, 2) that the activity engaged in must bear a significant relationship to maritime activity. *Executive Jet Aviation City v. City of Cleveland, Ohio*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). While admiralty tort jurisdiction is limited by the requirement that the wrong bear a significant relationship to traditional maritime activity, there is no requirement that the maritime activity be exclusively commercial in nature. *Formost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). What is necessary for maritime jurisdiction is a significant nexus to traditional maritime activities. *Formost v. Richardson, supra.* Plaintiff's in *Formost v. Richardson* brought suit to recover for the death of an occupant of a pleasure boat which collided with another pleasure boat on the Amite River in Louisiana. The Supreme Court found that the federal interest in protecting maritime commerce can be fully vindicated only if all operators of vessels on navigable waters are subject to uniform rules of conduct. Therefore, since the accident had a potential effect on the navigability of the Amite River, admiralty jurisdiction was appropriate.

Courts generally have gone to great lengths to find admiralty jurisdiction. For example, in *Kelly v. Smith*, 485 F.2d 520 (5th Cir.1973), deer poachers escaping in a 15 foot flatboat from a private hunting club preserve located on a Mississippi River island, were visited by rifle fire from onshore club members. One of the poachers sued for damages sustained as a result of a gunshot wound and invoked admiralty jurisdiction. First, the Fifth Circuit found the stretch of river where the plaintiff was shot navigable, and, second the rifle fire directed at plaintiff's small vessel presented sufficient danger to maritime commerce for federal courts of admiralty to assume jurisdiction. More recently, in *Respess v. the United States*, 586 F.Supp. 861 (E.D.

La.1984), Judge McNamara found admiralty jurisdiction existed when a pleasure boat passenger was injured when the boat collided with a tree branch hanging over a flood control canal. After finding that the canal satisfied the navigable waters test, the court went on to determine there existed a maritime nexus to the operation of the pleasure boat. In determining that the pleasure boat allision bore a significant relationship to traditional maritime activity, the court relying on *Formost v. Richardson, supra,* found the general need for uniform rules governing navigation was sufficient to satisfy the second prong of the *Executive Jet* test. Judge McNamara also used the four "maritime nexus" factors identified in *Kelly v. Smith*,[1] *supra,* to determine there was a significant relationship between the injury complained of and traditional maritime activity. The *Kelly v. Smith* factors are: 1) the function and roles of the party; 2) the types of vehicles and instrumentalities involved; 3) causation and type of injury; and, 4) the traditional concept of the role of admiralty law. *Kelly v. Smith*, 485 F.2d at 525. *See also Moser v. Texas Trailer Corp.*, 623 F.2d 1006, 1009 (5th Cir.1980).

█ In applying the *Executive Jet* test to the instant case, it is clear the first prong is satisfied as the water in which plaintiff was diving is navigable. As to the second prong, recreational diving has little to do with normal maritime activities although an imperiled diver arguably could have an adverse effect on navigation. However, this Court finds the *Kelly v. Smith* nexus test has not been fulfilled by the circumstances of plaintiff's accident. First, the function and role of plaintiff and defendant in the instant case have little to do with navigation: Harry's scuba course provided plaintiff necessary knowledge in the art of recreational scuba diving which has no logical relationship to navigation. Second, although the type of vehicles and instrumentalities involved bear a relationship to traditional navigation, those instrumentalities do not relate to plaintiff's claim.

1. The Fifth Circuit in *Kelly v. Smith* stated the four "maritime nexus" factors are to be used to

determine if the "relationship to maritime activity" requirement of *Executive Jet* has been met.

88

Neither the crewboat nor the diving equipment are alleged by plaintiff to relate to his injuries, rather plaintiff alleges Harry's negligently instructed him on the dangers of the bends. Third, the causation and type of injury prong of *Kelly v. Smith* is not satisfied. The decompression sickness plaintiff alleges was not caused by any impediment to navigation nor is decompression sickness an injury normally incurred because of an impediment to navigation; rather, the bends normally arise out of the negligence of the diver, a defect in his equipment or the negligence of those assisting in the dive. Finally, and fourth, the traditional concepts of the rule of admiralty law are not implicated in the instant case. The Court in *Executive Jet, supra,* described and summarized the concerns of admiralty law as it relates to traditional maritime activity as follows:

> The law of admiralty has evolved over many centuries, designed and molded to handle problems of vessels relegated to ply the waterways of the world, beyond those shores they cannot go. That law deals with navigational rules—rules that govern the manner and direction those vessels may rightly move upon the waters. When a collision occurs or a ship founders at sea, the law of admiralty looks to those rules to determine fault, liability, and all the questions that may arise from such a catastrophy. Through long experience, the law of the sea knows how to determine whether a particular ship is seaworthy, and it knows the nature of maintenance and cure. It is concerned with maritime liens, the general average, capture and prizes, limitation of liability, cargo damage and a claim for salvage.

93 S.Ct. at 505.

Although admiralty jurisdiction is normally subject to liberal application, it is this Court's opinion that plaintiff's claims in the instant case does not arise out of any activity or action which stem from the basic admiralty premises outlined above by the *Executive Jet* Court.

Accordingly, defendant Harry's Diving Shop motion for summary judgment is HEREBY GRANTED. However, cognizant of the novel question before this Court, and being of the opinion that it involves a controlling question of law as to which there is substantial ground for difference of opinion, the Clerk is directed to enter a final appealable order DISMISSING this case as to defendant Harry's Dive Shop. Disposition of this case, except for discovery purposes, is STAYED pending resolution of such appeal.