**Richard McCARTHY,**
**Plaintiff–Appellant,**

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

No. 86–2988.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 18, 1987.

Decided June 28, 1988.

Luke Ellis, Gillin, Jacobson & Ellis, Berkeley, Cal., for plaintiff-appellant.

Chris Stoll, Asst. U.S. Atty., San Francisco, Cal., for defendant-appellee.

Before TANG, CANBY and BRUNETTI, Circuit Judges.

TANG, Circuit Judge:

Richard McCarthy appeals the district court's dismissal of his action against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671 *et seq.* McCarthy was severely injured in a diving accident that occurred at a lake owned and operated by the United States and the Army Corps of Engineers as part of a federal flood control project. The district court concluded the United States was immune from liability under the Flood Control Act of 1928, 33 U.S.C. § 702c. We affirm.

I.

Lewisville Lake is a reservoir in Denton County, Texas constructed by the Army Corps of Engineers "in the interest ... of flood control" under the River and Harbor Act, as amended, March 2, 1945, 33 U.S.C. § 603a (1982). Although the State of Texas owns the water of Lewisville Lake, the United States owns the underlying land. The dam, constructed in connection with the flood control project, is owned and operated by the United States. Lewisville Lake is a multi-purpose project lake that has flood control as one of its purposes. The Corps monitors its water level daily and adjusts discharge rates when necessary.

The Lake also contains seventeen discrete parks, one of which is East Copperas Park. The Army Corps of Engineers operates East Copperas Park, and nine other parks located along the perimeter of the Lake, as a recreational facility. The construction, maintenance and operation of East Copperas Park is authorized by 16 U.S.C. § 460d (1982). East Copperas Park does not have a designated swimming area. Its facilities include picnic tables, a boat ramp, and vehicle parking spaces. There is no use fee charged at the Park.

On April 20, 1984 Robert McCarthy went to East Copperas Park at Lewisville Lake to windsurf with two friends. Plaintiff dove into the water, at a point where he was about waist-deep, struck his head on the bottom of the lake and fractured his neck. As a result of his accident, McCarthy was rendered a quadriplegic.

McCarthy filed suit in federal district court, after his claim had been presented to and denied by the Department of the Army, on March 20, 1986. The complaint alleged: that the defendant constructed, maintained, operated and controlled the premises on which plaintiff was injured; that defendant controlled and permitted access to the location where plaintiff was injured and encouraged such use of the beach; that defendant had observed, but failed to prohibit, swimming and diving at that location; that the premises were dangerous and defective in several particularly

described respects, and that defendant knew it; that despite such knowledge, defendant encouraged the public to dive there, failed to give any warning to foreseeable users of the beach of the known dangerous conditions, failed to prohibit diving, and failed to inspect the beach or make it safe.

The trial court, relying on *United States v. James*, 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986), held the government was immune from liability under § 702c of the Flood Control Act of 1928. *McCarthy v. United States*, 654 F.Supp. 33 (N.D.Cal. 1986). The district court also determined the government's alleged negligence in failing to post warning signs at East Copperas Park was not "wholly unrelated" to a federal flood control project. *Id.* at 35. McCarthy timely appeals.

## II.

The district court concluded it had no jurisdiction, based on its finding that § 702c immunity applied, and dismissed the action. McCarthy contends that the district court's dismissal, pursuant to the government's motion under Fed.R.Civ.P. 12(b)(1) and 12(b)(6), should be treated as one for summary judgment under Rule 56 as matters outside the pleadings were received and considered. We disagree.

■ The question whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction. *See, e.g., Nevin v. United States*, 696 F.2d 1229, 1231 (9th Cir.), *cert. denied*, 464 U.S. 815, 104 S.Ct. 70, 78 L.Ed.2d 84 (1983) (whether discretionary function exemption applies under FTCA question of subject matter jurisdiction); *Wright v. United States*, 719 F.2d 1032, 1034 (9th Cir.1983) (court lacks subject matter jurisdiction if claim against United States under FTCA falls within statutory exception); *c.f., Mitchell v. Occidental Ins., Medicare*, 619 F.2d 28, 30 (9th Cir.1980) (no constitutional right to sue the United States without its consent).

■ Moreover, when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *See, e.g., Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947) ("when a question of the District Court's jurisdiction is raised ... the court may inquire by affidavits or otherwise, into the facts as they exist."); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir.1983) (consideration of material outside the pleadings did not convert a Rule 12(b)(1) motion into one for summary judgment). Accordingly, we review the district court's action as a dismissal for lack of jurisdiction over the subject matter. The subject matter jurisdiction of a federal court presents a question of law, reviewable de novo. *See Peter Starr Prod. Co. v. Twin Continental Films, Inc.*, 783 F.2d 1440, 1442 (9th Cir.1986).

## III.

■ The question presented is whether McCarthy's action falls within the immunity provision of the Flood Control Act of 1928, 33 U.S.C. § 702c (1982). Section 702c provides: "No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place." The Supreme Court recently underscored the broad scope of this provision in *United States v. James*, 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986).

*James* involved accidents at flood control projects where recreational users of reservoirs were swept through water retaining structures when those structures were opened to release waters in order to control flooding. *James*, 106 S.Ct. at 3118. The Court held section 702c immunized the United States from damages for property damage, personal injury and death caused by "all waters contained in or carried through a federal flood control project for purposes of or related to flood control, as well as to waters that such projects cannot

control." *James*, 106 S.Ct. at 3121. The immunizing provision applied despite the government's negligent failure to warn of the dangers associated with the operation of the flood control project. *James*, 106 S.Ct. at 3124. The court's discussion emphasized that § 702c of the Flood Control Act "outlines immunity in sweeping terms" and noted "[i]t is difficult to imagine broader language." 106 S.Ct. at 3121.

Given the definition of "floodwaters" and "damage" articulated in *James*, as well as the standards we have set out in pre-*James* cases for determining the scope of § 702c immunity, we conclude the immunity provision applies in this case. First, *James* made clear the term "floodwater" is to apply to "all waters contained in ... a federal flood control project for purposes of or related to flood control ..." 106 S.Ct. at 3121. This definition of floodwater suggests that the term includes both "waters that are out of control" and "water at a flood control project." *See, James v. United States*, 760 F.2d 590, 594, n. 6 (5th Cir.1985) (en banc) (noting ambiguity in term floodwater), *rev'd*, 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986). Thus, insofar as the waters of Lewisville Lake are clearly "contained in" a federal flood control project and further, where the water level of the Lake is monitored on a daily basis and discharged when necessary, the waters herein satisfy the *James* definition of "floodwater," and accordingly, fall within the meaning of the statute.[1]

Second, we find there is a sufficient nexus between the injury sustained by McCarthy and the operation of a Congressionally authorized federal flood control project. We have stated that "if injury resulted from the operation of [a] federal project for flood control purposes, government immunity is complete." *Morici Corp. v. United States*, 681 F.2d 645, 647 (9th Cir.1982). McCarthy contends his case falls outside this general rule and is distinct from *James*, because his injuries did not result from any tangible flood control activity or operation. This argument, which seeks to distinguish between the active operation of a flood control facility and its passive or more static condition, cannot, in light of *James*, be maintained.

We have previously indicated that § 702c immunity applies where the operation of flood control facilities allegedly resulted in crop damage due to seepage of water, *Morici*, 681 F.2d at 646, damage to land due to the impoundment of flood waters, *Pierce v. United States*, 650 F.2d 202, 203 (9th Cir. 1981), and flood damage due to the collapse of the Teton Dam, *Aetna Ins. Co. v. United States*, 628 F.2d 1201, 1202 (9th Cir. 1980), *cert. denied*, 450 U.S. 1025, 101 S.Ct. 1732, 68 L.Ed.2d 220 (1981). The instant case, though lacking a more obvious connection to a flooding or floodwater disaster such as that present in the *Aetna* case, is perhaps more analogous to the seepage described in *Morici*. Although McCarthy's injury did not result from a perceptibly active operation of the flood control facility, the record does indicate ongoing monitoring and discharge of water levels at the Lake, activities which even formed part of appellant's complaint for negligence. *See* Complaint, ¶¶ 12(c), 13(a).

Given the difficulty of distinguishing between the active and passive operations of federal flood control facilities, particularly since a passive condition is invariably the result of other active forces which have gone before, we decline to adopt the distinction urged by McCarthy. By including Lewisville Lake as part of a larger federal flood control facility, the United States created a "condition" which under a variety of circumstances could result in harm to person and property. As the Supreme Court underscored in *James*, the "sweeping language" and legislative history of § 702c indicate a Congressional intent "to ensure beyond doubt that sovereign immunity would protect the government from 'any' liability associated with flood control." *James*, 106 S.Ct. at 3123. Accordingly, because waters contained in a federal flood control project for purposes related to flood

---

1. It is also evident that the personal injuries sustained by McCarthy fall within the term "damage" of § 702c. *James* expressly found that the word "damage" included both injury to property and injury to the person. *James*, 106 S.Ct. at 3121.

control were a substantial factor in bringing about McCarthy's injuries, the immunity provision applies.

Nor is this conclusion altered by the multi-purpose nature of the flood control facility at Lewisville Lake. It is clear the immunity provision of § 702c can apply even though a federal project has multiple purposes and is not intended exclusively for flood control. *Morici,* 681 F.2d at 647; *Aetna,* 628 F.2d at 1203. *James* itself involved injury to recreational users of a reservoir that also had federal flood control use. Further, we have declined previously to adopt the position apparently now urged by McCarthy, namely, the notion that the applicability of the immunity provision in cases involving multi-purpose projects depends upon the particular use to which the project was being put when the negligence occurred. *See Morici,* 681 F.2d at 647. In *Morici* we expressly rejected this argument, which relies on the Fourth Circuit case *Hayes v. United States,* 585 F.2d 701 (4th Cir.1978), and reaffirmed the "wholly unrelated" standard for determining whether § 702c immunity applies.

In *Morici* we approved that portion of the discussion in *Hayes* which stated "[t]here is no immunity for flooding caused by a federal project unrelated to flood control." *See Morici,* 681 F.2d at 647; *Hayes,* 585 F.2d at 702 (citing *Graci v. United States,* 456 F.2d 20 (5th Cir.1971)). We declined, however, to adopt the rule in *Hayes* that "[i]f the plaintiff could prove damage to his farm as a result of the dam's operation as a recreational facility without relation to the operation of the dam as a flood control project, he would avoid the absolute bar of § 702c." *Hayes,* 585 F.2d at 702–03; *Morici,* 681 F.2d at 647. Instead we stated that it is the purpose of the project authorized by Congress and not the purpose of the employee's conduct that is determinative. *Morici,* 681 F.2d at 648.[2]

Thus, in this circuit, the immunity provision of § 702c does not apply when the damage or injury is "wholly unrelated to any Act of Congress authorizing expenditures of federal funds for flood control, or any act undertaken pursuant to any such authorization." *Morici,* 681 F.2d at 647 (quoting *Peterson v. United States,* 367 F.2d 271, 275 (9th Cir.1966)). So long as a project is authorized by Congress for flood control purposes, and the damage or injury is related to the use of that project, immunity continues to attach. *See Morici,* 681 F.2d at 648. Two cases, where immunity was denied, illustrate the application of this standard. In *Peterson* we considered flooding caused by engineers at Ladd Air Force Base in Alaska who dynamited an ice jam without warning and caused a damaging discharge of water and ice downstream. In that case, we denied the government immunity, finding the flooding was "wholly unrelated" to any Act of Congress authorizing expenditures of funds for flood control. *Peterson,* 367 F.2d at 275. In a similar vein, the Fifth Circuit denied immunity for flood damage allegedly caused by negligent design and construction of the Mississippi River Gulf Channel Outlet, a navigation project and not a federal flood control project. *See Graci,* 456 F.2d 20, 26 (5th Cir.1971).

Here, however, the necessary connection to a Congressionally authorized federal

2. This distinction between the *Morici* and *Hayes* standards for determining the scope of § 702c immunity explains why appellant's reliance on *Denham v. United States,* 646 F.Supp. 1021 (W.D.Texas 1986), *aff'd,* 834 F.2d 518 (5th Cir. 1987) and *Respess v. United States,* 586 F.Supp. 861, 865 (E.D.La.1984) is misplaced. The district court in *Denham,* a post-*James* case, squarely applied the *Hayes* test and concluded § 702c did not bar suit against the United States because the plaintiff alleged an injury "unconnected with the operation of the facility as a flood control project." *Denham,* 646 F.Supp. at 1026. (The United States did not appeal this portion of the lower court's ruling.) In *Respess,*

a pre-*James* case, the court, citing no authority, concluded that claims arising from damage and injury to passengers in a pleasure boat allegedly caused by a failure to clear a waterway of navigational hazards, were not barred by § 702c because not caused by "flood waters." *Respess,* 586 F.Supp. at 865. Although the *Respess* analysis is somewhat suspect in light of *James,* this court in any event, is bound by the "wholly unrelated" standard articulated in *Morici.*

In *James,* the Supreme Court cited both *Hayes* and *Morici,* emphasizing the "without relation" language of *Hayes* and the "wholly unrelated" standard of *Morici. See James,* 106 S.Ct. at 3122, n. 7.

flood control project is present. Lewisville Lake is a reservoir that forms part of a larger flood control project, authorized by Congress under the River and Harbor Act, 33 U.S.C. § 603a, for the purpose of flood control. Under *Morici,* "[e]ven if the project was being operated at the time of the negligence for a purpose other than flood control," so long as the damage or injury was not "wholly unrelated" to a Congressionally authorized flood control project, a sufficient nexus for purposes of § 702c immunity exists. *Morici,* 681 F.2d at 648. Thus, given the broadened definition of floodwater in *James,* the analysis of multi-purpose projects in *Morici* and *Aetna,* and the longstanding "wholly unrelated" standard of this circuit, we reluctantly conclude the immunity provision of § 702c bars McCarthy's suit for damages against the United States.

■ Finally, we consider McCarthy's claims regarding the government's alleged failure to post warning signs or other notices to recreational users of East Copperas Park and Lewisville Lake. In *James* the Supreme Court indicated "that the manner in which to convey warnings, including the negligent failure to do so, is part of the 'management' of a flood control project." *James,* 106 S.Ct. at 3124. In this case, the beach at East Copperas Park had not been designated a swimming area. The reasoning in *James* indicates that the government's allegedly negligent failure to warn of dangers associated with the use of Lewisville Lake as a flood control facility is considered part of the "management" of a flood control project. Accordingly, insofar as McCarthy alleges negligence in the failure to warn of dangers associated with Lewisville Lake, his claim is barred under § 702c because such negligence is not "wholly unrelated" to the management of a federal flood control project. McCarthy's injuries clearly occurred in flood control project waters, and so, under *James,* his claim of negligence regarding the failure to warn is not actionable.

### IV.

Section 702c of the Flood Control Act of 1928, as construed by the Supreme Court in *James,* bars McCarthy's action under the FTCA for the personal injuries he sustained while using the waters of Lewisville Lake, a federal flood control reservoir, for recreational purposes. The district court lacked subject matter jurisdiction over the action, and accordingly, properly dismissed.

AFFIRMED.