Melba DUKE

v.

**UNITED STATES of America.**

**Civ. A. No. B–86–1798–CA.**

United States District Court,
E.D. Texas,
Beaumont Division.

Jan. 9, 1989.

Robert E. Barnes, Beaumont, Tex., for plaintiff.

O. Kenneth Dodd, Asst. U.S. Atty., Beaumont, Tex., for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

The plaintiff's decedent died in a boating accident on May 12, 1984. The plaintiff contends that the accident occurred within the confines of the Big Thicket National Park (BTNP), four hundred to five hundred feet north of the Neches River, on Booth's Bayou.

Taking her first action on May 8, 1986, the plaintiff submitted an administrative claim under the Federal Tort Claims Act. After a final determination under this Act, the plaintiff filed suit on December 22, 1986. On March 23, 1987, the government filed its first motion on this matter, contending that the suit fell under the Suits in Admiralty Act and was therefore barred under the two-year statute of limitations.

### A. STATUTE OF LIMITATIONS

■ The Federal Tort Claims Act (FTCA) and the Suits in Admiralty Act (SAA) are mutually exclusive. Title 28 U.S.C. § 2680 of the FTCA says in pertinent part as follows:

> [T]he provisions of this chapter and § 1346(b) of this title shall not apply to— (d) any claim for which a remedy is provided by § 741–752, 781–790 of Title 46, relating to claims or suits in admiralty against the United States.

*Id.* In short, any claim actionable under the court's admiralty jurisdiction cannot be brought under the FTCA.

It is required by the SAA, 46 U.S.C.App. § 741 *et seq.* that suit must be filed within two years of the action giving rise to the tort. *Id.* Plaintiff's cause of action arose on May 12, 1984, the time of the mishap. Therefore, if this action is cognizable under the court's admiralty jurisdiction, the action should have been commenced by May 12, 1986.

### B. ADMIRALTY JURISDICTION

■ The government contends that jurisdiction, if any, lies under the Suits in Admiralty Act (SAA), 46 U.S.C.App. § 741 *et seq.* The determination of admiralty jurisdiction over torts is a conjunctive inquiry which is referred to as a "locality-plus" test. *Respess v. United States*, 586 F.Supp. 861, 863 (E.D.La.1984). The first requirement of the test is that the tort must have occurred on "navigable" waters. Secondly, the tort must bear a significant relationship to traditional maritime activity. *E.g., Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972).

### 1. *Navigability.*

■ Flexibility has been shown by the courts in defining navigability. For instance, the courts have noted that definitions of navigability developed in commerce clause cases are not appropriate where the actual capability of a stream to support navigation is critical. *Kaiser Aetna v. United States*, 444 U.S. 164, 171, 100 S.Ct. 383, 388, 62 L.Ed.2d 332 (1979); *Livingston v. United States*, 627 F.2d 165, 169 (8th Cir.1980), *cert. denied*, 450 U.S. 914, 101 S.Ct. 1354, 67 L.Ed.2d 338 (1981). *But see, Finneseth v. Carter*, 712 F.2d 1041, 1045 (6th Cir.1983). On the other hand, navigability for Corps of Engineers jurisdiction has been seen as more akin to navigability under the SAA because both standards rely upon a functional analysis of navigability. *See, Livingston*, 627 F.2d at 169. *Accord, Wilder v. Placid Oil Co.*, 611 F.Supp. 841, 844 (W.D.La.1985). Additionally, Coast Guard jurisdiction has closely followed Corps of Engineers jurisdiction because of similar functional bases. *See, United States v. Lamastus and Associates, Inc.*, 785 F.2d 1349, 1353, n. 4 (5th Cir.1986). *See also, United States v. DeFelice*, 641 F.2d 1169, 1175 n. 15 (5th Cir.1981), *cert. denied*, 454 U.S. 940, 102 S.Ct. 474, 70 L.Ed.2d 247 (1981) (approved of ebb and flow test as a means of determining Corps' jurisdiction). *Compare*, 33 C.F.R. § 2.05–25(a)(2) with 33 C.F.R. § 329.4 (both forms of jurisdiction may depend on tidal influence).

Part of the government's brief relies on the definition of "navigable waters" as it is defined for coast guard jurisdiction. Navigable waterways in this context and in the Corps' context have been defined as those

which connect to existing waterways used in interstate commerce and are subject to tidal influence. *See, Lamastus,* 785 F.2d at 1353; *DeFelice,* 641 F.2d at 1175 n. 15.

Booth's Bayou is connected to the Neches River which carries substantial commercial traffic and even ocean going traffic into the Port of Beaumont. The government has shown that the bayou is subject to tidal influence. Brief in Support of Defendant's Motion to Dismiss, June 2, 1988, Exhibit D. Under the ebb and flow definition, Booth's Bayou meets the criteria for being a navigable waterway.

Even more illustrative of navigability is the actual navigation on Booth's Bayou. Boats navigated the bayou routinely at the time of the accident, and a commercial boat launch upstream helped facilitate the traffic. Even the accident in question occurred because a boat was navigating the waterway. In arguing that the government had a duty to dredge this section of bayou, the plaintiff has conceded that boat traffic on the bayou was quite intense.

The plaintiff has contested navigability in part on the lack of commercial activity on Booth's Bayou. Even assuming that the traffic on the bayou was not commercial at the relevant time, it is evident that the bayou was physically capable of being used as a highway of commerce. And it does not appear that all commercial activity was banned on the waterway even though BTNP regulations prohibited commercial fishing within the park. Moreover, the "highway of commerce" definition of navigability does not require the presence of actual commercial activity, but only the capability to handle such. *Richardson v. Foremost Insurance Co.,* 641 F.2d 314, 316 (5th Cir.1981), *aff'd,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982).

Therefore, because of tidal influence within the park as well as the actual capability of the bayou to support navigation, Booth's Bayou meets the standards for being a navigable waterway under the SAA.

### 2. *Relationship to Traditional Maritime Activity.*

■ Whether the activity bore a significant relationship to traditional maritime activity is the second aspect of the locality-plus test. *Executive Jet Aviation,* 409 U.S. at 268, 93 S.Ct. at 504. The Supreme Court has held that the collision between two pleasure boats, even though one was pulling a "zip sled" skier, constituted a sufficient maritime nexus. *Richardson v. Foremost Insurance Co.,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). A district court has held that contact between a boat operator's head and a low hanging limb constituted a sufficient maritime nexus. *Respess v. United States,* 586 F.Supp. 861. According to the plaintiff's arguments in this case, the deceased was a passenger in a small pleasure boat traversing Booth's Bayou when his boat struck another boat. This provides a sufficient maritime nexus.

### C. *WAIVER OF STATUTE OF LIMITATIONS*

■ Assuming arguendo that her cause of action falls under the SAA, the plaintiff contends that the statute of limitations should be tolled. Case law supports the notion that the statute of limitations under the SAA should be tolled where such tolling would be consonant with the legislative scheme. *McCormick v. United States,* 680 F.2d 345 (5th Cir.1982). Among the situations where tolling is appropriate are those in which the plaintiff is physically or legally unable to bring the lawsuit in the requisite time, or where the defendant has fraudulently induced the plaintiff to refrain from filing the correct lawsuit. However, more than the timely submission of an administrative claim under the FTCA is needed to overcome the presumption that the statute of limitations under the SAA should be followed. *Bovell v. United States,* 735 F.2d 755, 757 (3rd Cir.1984). No facts have been presented in this case which would justify tolling the limitations period. Confronted by uncertainty over which lawsuit to pursue, the plaintiff should have followed the alternative pleading provisions contained in the Federal Rules of Civil Procedure rather than merely filing an administrative claim four days before the statute

of limitations ran. Tolling the statute, under the circumstances presented, would defeat the purpose of the statute of limitations, which is to encourage those with claims against the United States to present those claims promptly and diligently.

## CONCLUSION

For the foregoing reasons, the court finds that the plaintiff failed to comply with the applicable statute of limitations and that the complaint against the defendant should be dismissed.