Donald W. TAYLOR and Doris Taylor, Appellees,

v.

UNITED STATES of America, Appellant.

No. 78–1585.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 19, 1978.

Decided Jan. 4, 1979.

---

Herbert A. Becker, Asst. U. S. Atty., Fargo, N. D., for appellant; Names appearing on briefs are James R. Britton, U. S. Atty., Fargo, N. D., on brief.

Herbert L. Meschke of Pringle & Herigstad, Minot, N. D., for appellees; M. R. McIntee of McIntee & Whisenand, Williston, N. D., on brief.

Before GIBSON, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This case comes before us on appeal from the trial court's[1] denial of a motion for summary judgment made by the appellant-defendant United States Government. The issue presented is whether 33 U.S.C. § 702c[2] provides immunity to the United States for the water damage that occurred to appellee-plaintiffs Donald and Doris Taylor's property in the summer of 1975. We hold the government immune from all claims alleged in the Taylors' first amended complaint[3] and we reverse and remand this

---

**1.** The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota.

**2.** 33 U.S.C. § 702c provides:

Except when authorized by the Secretary of the Army upon the recommendation of the Chief of Engineers, no money appropriated under .authority of sections 702a, 702b to 702d, 702e to 702g, 702h to 702j, 702k, 702*l*, and 702m of this title shall be expended on the construction of any item of the project until the States or levee districts have given assurances satisfactory to the Secretary of the Army that they will (a) maintain all flood-control works after their completion, except controlling and regulating spillway structures, including special relief levees; maintenance includes normally such matters as cutting grass, removal of weeds, local drainage, and minor repairs of main river levees; (b) agree to accept land turned over to them under the provisions of section 702d of this title; (c) provide without cost to the United States, all rights of way for levee foundations and levees on the main stem of the Mississippi River between Cape Girardeau, Missouri, and the Head of Passes.

No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place: *Provided, however,* That if in carrying out the purposes of sections 702a, 702b to 702d, 702e to 702g, 702h to 702j, 702k, 702*l*, and 702m of this title it shall be found that upon any stretch of the banks of the Mississippi River it is impracticable to construct levees, either because such construction is not economically justified or because such construction would unreasonably restrict the flood channel, and lands in such stretch of the river are subjected to overflow and damage which are not now overflowed or damaged by reason of the construction of levees on the opposite banks of the river it shall be the duty of the Secretary of the Army and the Chief of Engineers to institute proceedings on behalf of the United States Government to acquire either the absolute ownership of the lands so subjected to overflow and damage or floodage rights over such lands.

**3.** On November 22, 1976, the Taylors filed suit against the United States Government, seeking recovery for both a taking, 28 U.S.C. §§ 1346(a)(2), 1402, and tort claim damages, 28 U.S.C. §§ 1346(b), 2671 et seq. On February 22, 1977, the United States filed an answer to the Taylors' complaint. On March 2, 1977, the Taylors initiated discovery procedures by filing their first set of interrogatories. Then, on April 29, 1977, the United States filed a motion for summary judgment with supporting affidavit. There was no action by either of the parties or the district court until January 5, 1978, when the Taylors filed a motion to amend their complaint, brief and affidavit in support thereof, and a first amended complaint, which dismissed the taking claim under 28 U.S.C. §§ 1346(a)(2), 1402, see *United States v. Cress,* 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746 (1917), and restated the tort claim. The district court granted this motion and ordered the first amended complaint to be filed on February 13, 1978. The district court then considered the motion for summary judgment filed by the

case to the district court with instructions to enter a summary judgment for the government pursuant to Fed.R.Civ.P. 56.

The Taylors own a farm adjacent to the Yellowstone and Missouri Rivers in western North Dakota. Their farm is located midway between the Ft. Peck Dam, located in Montana, and the Garrison Dam, located in North Dakota. There are four other dams, all located downstream from the Garrison Dam, and the six projects together operate for the purposes of flood control, irrigation, navigation, hydroelectric power generation, water supply, water quality improvement, recreation, and fish and wildlife enhancement. Lake Sakakawea is located behind the Garrison Dam on the Missouri River in North Dakota. Thus the Taylors' farm is upstream from Lake Sakakawea and the Garrison Dam.

On June 18 and 19, 1975, severe rains occurred in east-central Montana, causing severe flooding along many tributary streams of the Missouri River. During this general time period, the Taylors alleged that the government wrongfully and negligently operated the Garrison Dam and the reservoir impoundment, Lake Sakakawea, above the legally authorized water level. It is the Taylors' contention that this caused the impoundment waters of Lake Sakakawea to back up on their property; the accumulation of water on the Taylor farm in June, July and August, 1975, caused crop damage to 23 acres of wheat, 22 acres of hay, and 135 acres of pasture.

The Taylors' first amended complaint was filed against the government under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 et seq., and alleged the wrongful operation by the government of the Garrison Dam and Reservoir and further claimed damages of $11,862.

The trial court denied the government's motion for summary judgment, stating that "[t]he Court is persuaded \* \* \* that 33 U.S.C. Section 702c does *not* provide abso-

lute immunity to the United States under the circumstances alleged in Plaintiff's First Amended Complaint, and, further, that the operation of the Garrison Dam and the maintenance of the water level in Lake Sakakawea beyond its legally authorized level is *not* a 'discretionary function' within the exception provided by 28 U.S.C. Section 2680(a)."

The trial court then certified, pursuant to 28 U.S.C. § 1292(b), the issue raised by the motion for summary judgment: "[w]hether or not 33 U.S.C. § 702c provides absolute immunity to the United States for damages tortious in nature caused to the Plaintiffs by actions of the Defendants," and this court granted leave to appeal. Fed.R. App.P. 5.

The stringent requirements for the moving party on a summary judgment motion are well known:

[S]ummary judgment is an extreme remedy and one which is not to be entered unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances.

*Bellflower v. Pennise*, 548 F.2d 776, 777 (8th Cir. 1977). Thus, for the purposes of this appeal, we will assume all facts favorably to the Taylors.

Interpreting the scope of immunity of section 702c is not a new task for this court. The Eighth Circuit has written the leading case in this regard, *National Mfg. Co. v. United States*, 210 F.2d 263 (8th Cir.), cert. denied, 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1108 (1954), wherein we stated:

[W]hen Congress entered upon flood control on the great scale contemplated by the Acts [33 U.S.C. § 701 et seq.] it safeguarded the United States against liability of any kind for damage from or by floods or flood waters in the broadest and most emphatic language. The cost of the flood control works itself would inevita-

United States in response to the original complaint as being responsive to the first amended complaint. The district court denied the United States' motion for summary judgment on

March 9, 1978, and entered an order on March 10, 1978. Consequently, on this appeal, we are concerned only with the issues raised in the first amended complaint.

bly be very great and Congress plainly manifested its will that those costs should not have the flood damages that will inevitably recur added to them. Undoubtedly floods which have traditionally been deemed "Acts of God" wreak the greatest property destruction of all natural catastrophies and where floods occur after flood control work has been done and relied on the damages are vastly increased. But there is no question of the power and right of Congress to keep the government entirely free from liability when floods occur, notwithstanding the great government works undertaken to minimize them. Congress included Section 3 [702c] in the 1928 Act and carried it forward into the 1936 Act and others with intent to exercise that power completely and to absolutely bar any such federal liability.

\* \* \* \* \* \*

Undoubtedly that absolute freedom of the government from liability for flood damages is and has been a factor of the greatest importance in the extent to which Congress has been and is willing to make appropriations for flood control and to engage in costly undertakings to reduce flood damages.

\* \* \* [Section 702c] does not limit the bar against such recovery to cases where floods or flood waters are the sole cause of damages. It does bar liability of any kind from damages "by" floods or flood waters but it goes further and in addition it bars liability for damages that result (*even indirectly*) "from" floods. The use of the word "from" in addition to "by" makes it clear that the bar against federal liability for damages is made to apply wherever floods or flood waters have been substantial and material factors in destroying or damaging property. The language used shows Congressional anticipation that it will be claimed after the happening of floods that negligence of government employees was a proxi-

mate cause of damages where floods or flood waters have destroyed or damaged goods. But the section prohibits government liability of "any kind" and at "any place". So that uniformly and throughout the country at any place where there is damage "from" or "by" a flood or flood waters in spite of and notwithstanding federal flood control works no liability of any kind may attach to or rest upon the United States therefor.

*Id.* at 270, 271 (emphasis added).

*National Mfg. Co. v. United States, supra,* has frequently been cited as support for the broad-based immunity grant of section 702c.[4] E. g., *Callaway v. United States,* 568 F.2d 684, 686 (10th Cir. 1978); *Florida East Coast Ry. v. United States,* 519 F.2d 1184, 1191-92 (5th Cir. 1975); *Graci v. United States,* 456 F.2d 20, 23-25 (5th Cir. 1971); *Parks v. United States,* 370 F.2d 92 (2d Cir. 1966); *Ledford v. United States,* 429 F.Supp. 204, 205 (W.D.Okl.1977).

The Taylors admit to the immunity status accorded the government by section 702c; they contend, however, that their situation is factually distinct and thus outside the scope of section 702c. The Taylors state in their brief: "If floods or flood waters remain so after impoundment, for the immunity of this statute, so that all torts committed in the operation of an impoundment are barred, then Summary Judgment for the Government would be correct." It is their position that the water which did damage to their property was *backwater,* and that section 702c does not grant the government immunity from the tort of trespass by backwater impoundment injury.

For the purpose of summary judgment, we assume the Taylors' allegations to be true. Backwater is a body or accumulation of water resulting from an obstruction or opposing current. Webster's Third New International Dictionary, Unabridged (G. & C. Merriam Co.1971). Floodwater has been defined as "[w]ater which has overflowed the natural banks of the stream in its natu-

---

**4.** "It is well-settled that the later passage of the [Federal Tort Claims Act] in 1946 did not repeal by implication the immunity granted under § 702c." *Lunsford v. United States,* 570 F.2d 221, 228 (8th Cir. 1977).

ral channel, and which is contained by a system of levees;" flood has been defined as "water which inundates an area of the surface of the earth where it ordinarily would not be expected to be." *Stover v. United States*, 204 F.Supp. 477, 485 (N.D. Cal.1962), *affirmed*, 332 F.2d 204 (9th Cir.), *cert. denied*, 379 U.S. 922, 85 S.Ct. 276, 13 L.Ed.2d 335 (1964).

It is argued by the Taylors that over a period of time the Garrison Dam obstructed sufficient water such that Lake Sakakawea was filled close to or at the maximum level. When the rains in June came, the additional water was impounded in the lake, took on the identity of backwater as opposed to floodwater, and increased the level to the point where backwater settled upon the Taylors' property.

We do not believe the Taylors' distinction between floodwaters and backwaters to be valid for the purposes of section 702c. Despite the allegations—which for summary judgment purposes we take to be true—that the government wrongfully and negligently operated the dam; that the water was obstructed to the point where it increased the water level to beyond the maximum; that the backwater level was resultantly increased; and that the water which damaged the Taylors' property was backwater, this factual situation falls within that which section 702c was meant to cover.

The Taylors do not deny that the rainstorm in June was severe [5] and they do not deny that the Garrison Dam and the other connected dams were built, inter alia, for the purpose of flood control. *See Callaway v. United States, supra*, 568 F.2d at 687.

We can see no rational distinction between floodwaters and backwaters that would lead to a different result in this case. The most favorable chain of events that we can presume is that the water already impounded in Lake Sakakawea was backwater. The rains of June were negligently impounded beyond the maximum operating level, which pushed the previously existing backwater onto the Taylors' property. To presume such a distinction is difficult enough, but it still does not escape the breadth of section 702c immunity. As we stated in *National Mfg. Co. v. United States, supra*, 210 F.2d at 271, section 702c "bars liability for damages that result (even indirectly) 'from' floods." Thus, even if it was backwater that damaged the Taylors' property, and even if section 702c would not cover "backwater" per se, the backwater was pushed onto the Taylors' property "in whole or in part from unusual or extraordinary climatic conditions." *Stover v. United States, supra*, 204 F.Supp. at 485.

Because we can conceive of no set of facts to be drawn from this case that would fall outside the scope of immunity in section 702c, we reverse and remand with instructions for the trial court to enter summary judgment for the government.

---

5. This court described the seasonal floods occurring along the Missouri River in *Omaha Indian Tribe, Treaty of 1854 v. Wilson*, 575 F.2d 620, 634–35 n.27 (8th Cir. 1978), *cert. granted*, —— U.S. ——, 99 S.Ct. 448, 58 L.Ed.2d 420 (1978):

> The regular floods are two in number, and usually occur in April and in June. The first is extremely violent and of short duration, rarely lasting over a week or ten days; it seems to come largely from the upper river. The June rise, although generally higher, is of longer duration, being influenced by local rains and the general saturation of the soil.

. . . The April rise is generally the most destructive, for it shows, for a time at least, a tendency to follow the channels developed during the low water season preceding, and, as a consequence, the banks are attacked with extreme violence. . . . Both, however, have sufficient power to produce tremendous effects and bring about the most astonishing changes.
*Preliminary Report Upon the Improvement of the Navigation of the Missouri River, in* Annual Report of the Chief of Engineers app. S, at 1651 (1881).