**Louis F. MOCKLIN, Jr., Husband of/and Maria Ryan Mocklin, Plaintiffs–Appellants,**

v.

**The ORLEANS LEVEE DISTRICT and Its Board of Levee Commissioners, Defendants–Third Party Plaintiffs–Appellants,**

**and**

**LUHR BROTHERS, INC., The Home Insurance Co., and City Insurance Co., Defendants–Cross Plaintiffs, Appellants,**

v.

**UNITED STATES ARMY CORPS OF ENGINEERS, Third Party Defendant–Cross Defendant–Appellee.**

No. 88–3675.

United States Court of Appeals, Fifth Circuit.

July 19, 1989.

Richard B. Ehret, McGlinchey, Stafford, Mintz, Cellini & Land, New Orleans, La., for Orleans Levee Dist. and its Bd. of Levee Comm.

Dennis P. Couvillion, Lee, Martiny & Caracci, Metairie, La., for Mocklin.

Randall A. Fish, Albert H. Hanemann, Jr., Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, La., for Luhr Bros., The Home Ins. Co. and City Ins. Co.

Thomas L. Watson, Robert J. Boitmann, Walter J. Becker, Asst. U.S. Attys., John Volz, U.S. Atty., New Orleans, La., for U.S. Army Corps of Engineers.

Before CLARK, Chief Judge, WILLIAMS and DAVIS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

In this appeal, the plaintiff-appellants challenge the district court's dismissal of the United States Army Corps of Engineers from this suit. 690 F.Supp. 527. The dismissal in the district court was based upon immunity from liability under the independent contractor defense and also the discretionary function exception to the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 1346(b); 28 U.S.C. § 2680(a).

We affirm the district court's dismissal. We find instead that the immunity of the Corps stems from the sweeping provisions of the Flood Control Act of 1928 ("FCA"), 33 U.S.C. § 702c.

I. *Facts and Prior Proceedings*

Because of past damages due to hurricanes and flooding in the lowlands of Lake Pontchartrain's tidal basin, the Corps of Engineers undertook a flood control project to prevent further damage.[1] The work for the project was conducted by Luhr Bros., Inc., under contract with the Corps of Engineers. Part of the plan called for the reinforcement of the levees along the lake. In order to accomplish this end, the plan required the excavation of flotation channels so that barges carrying necessary equipment could gain access to the construction site. The lake was not deep enough near the shore for the barges to have access so the lake was dredged to make the flotation channels.

Louis and Maria Mocklins' two sons were playing along the levees after these channels had been excavated. Their younger son waded out approximately one hundred feet into the lake and suddenly disappeared into the water and drowned. The Mocklins brought this action to recover damages arising out of the death of their son, alleging that he drowned when he slipped from a sand bar caused by the dredging into one of the flotation channels.

The Mocklins sued the Orleans Levee District and its Board of Commissioners and several other entities that were allegedly involved with the work being done to the levees. After the Levee Board impleaded the Corps of Engineers, the Mocklins amended their complaint to include the Corps as a direct defendant, seeking damages under the FTCA.[2] The Corps then filed a Motion to Dismiss or, alternatively, for Summary Judgment. The district court granted the motion, finding the Corps immune from liability under the FTCA because of the applicability both of the independent contractor defense and the discretionary function exception of the FTCA.

The district court's decision was timely appealed to this Court. During the course of oral argument on April 5, 1989, we requested briefs as to the applicability of the Flood Control Act to the facts of this case.[3] Because we find the FCA controlling, we have no need to review the district court's determinations under the FTCA exceptions. We affirm the dismissal based on absolute immunity under the FCA.

II. *The Supreme Court's Interpretation of the Flood Control Act*

Section 702c of the FCA provides that "[n]o liability of any kind shall attach to or rest upon the United States for any damages from or by floods or flood waters at any place." 33 U.S.C. § 702c. The Su-

---

1. Appellants conceded at oral argument that the work being done was part of a flood control project.

2. The suit charged negligent design of the flotation channels, negligent supervision of the construction project, and negligent failure to warn potential trespassers of the dangers at the construction site.

3. Because the question whether the Government has waived its sovereign immunity against suits for damages is, in the first instance, one of subject matter jurisdiction, "every federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower court in a cause under review,' even though the parties are prepared to concede it." *Bender v. Williamsport Area School District,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed. 2d 501 (1986) (citation omitted).

preme Court has given this provision broad meaning based on the language and legislative history of the section. *United States v. James*, 478 U.S. 597, 604, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986).

The Court's analysis in *James* begins with the words of the statute. It notes: " 'we assume that the legislative purpose is expressed by the ordinary meaning of the words used.' " *Id.* (quoting from *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982)). Interpreting the plain language then, the Court concludes that the terms "flood" and "flood waters" extend to "all waters contained in or carried through a federal flood control project for purposes of or related to flood control, as well as to waters that such project cannot control." *Id.* 478 U.S. at 605, 106 S.Ct. at 3121–22.

The use of the words "any damage" is also given a meaning consistent with the ordinary meaning of these words. The Court finds the phrase to include all different kinds of damages. The Court states:

> Damages 'have historically been awarded both for injury to property and injury to the person—a fact too well-known to have been overlooked by the Congress'.... Moreover, Congress' choice of the language 'any damage' and 'liability of any kind' further undercuts a narrow construction.

*Id.* at 604–05, 106 S.Ct. at 3121 (quoting *American Stevedores, Inc. v. Porello*, 330 U.S. 446, 450, 67 S.Ct. 847, 850, 91 L.Ed. 1011 (1947)).[4]

As to the legislative history, the Court " 'recognize[s] that where the terms of the statute [are] unambiguous, judicial inquiry is complete, except in 'rare and unusual circumstances.' " *Id.* 478 U.S. at 605, 106 S.Ct. at 3122 (citation omitted). The Court goes on, however, to find that the legislative history supports the Court's interpretation that the terms in § 702c should be given their ordinary meaning.

4. Appellants urge that Congress intended the damages awarded to apply only to those associated with the taking of private property for public use. *See* 478 U.S. at 612, 106 S.Ct. at 3125 (Stevens, J., dissenting). The majority in

The Court points out that the FCA was enacted in response to the Mississippi River Valley Flood in 1927 and that the Act called for the largest public works project of its time. The FCA "enacted 'a comprehensive ten-year program for the entire [Mississippi River] valley, embodying a general bank protection scheme, channel stabilization and river regulation, all involving vast expenditures of public funds.' " *Id.* at 607, 106 S.Ct. at 3122 (quoting *United States v. Sponenbarger*, 308 U.S. 256, 262, 60 S.Ct. 225, 227, 84 L.Ed. 230 (1939)). In this historical context, the Court observes "it is not surprising ... that the legislative history of § 702c shows a consistent concern for limiting the Federal Government's financial liability to expenditures directly necessary for the construction and operation of the various projects." *Id.* The critical statement of the law controlling this case was the Court's conclusion that "Congress clearly sought to ensure beyond doubt that sovereign immunity would protect the Government from 'any' liability associated with flood control." *Id.* 478 U.S. at 608, 106 S.Ct. at 3123.

*James* involved two consolidated cases arising out of the injuries of recreational users of federal flood control lakes. The claims arose from strong water currents caused by the flood control projects. The individuals were swept through flood gates and either injured or drowned. The Court found the claims to involve "flood waters" so that dismissal by the district court in both cases was appropriate under the absolute immunity provisions of the FCA.

### III. *Applicability of the James Court Interpretation*

Under this broad interpretation, our sole inquiry to determine whether the Corps is immune from liability is whether the Mocklins' son drowned "from or by" "flood water" within the meaning of § 702c. We conclude that he did.[5]

*James* dismisses this argument. 478 U.S. at 609, 106 S.Ct. at 3123.

5. The only other term of the statute that is disputed, "damages," clearly includes all types. Congress put no limit on the type of harm that

The flotation channel in which the Mocklins allege the drowning occurred properly can be said to contain water related to flood control. The channels were dredged because the lake was not deep enough for the barges to have access to the shore. The barges were needed to deliver the equipment and materials used in the reinforcement of the levees to prevent flooding. The channels were inescapably part of a flood control project.[6] The inquiry ends then, and the Government is protected from "any" liability caused by these waters as it was in *James. See also McCarthy v. United States*, 850 F.2d 558 (9th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989) (waters of a multi-purpose flood control project where the plaintiff was injured were flood waters within the *James* definition.)

Appellants argue that *McCarthy* and *James* are distinguishable because they involved accidents that resulted from water levels that were unsafe whereas under our facts it was not an increased water level that caused the accident. This accident occurred during the construction phase of the levees because of excavated channels. While in a different way from the prior cases, it is clear here that the water in the flotation channel causally did contribute to the drowning of the Mocklins' son: the channel created a significant drop-off in the lake. This distinction then does not change the result of immunity under both situations. Under both situations, the water can be said to have caused the injury. As the *James* court points out, Congress intended to protect the government from lia-

bility in the construction phase of the projects as well as in the maintenance of the projects once they were completed. *James,* 478 U.S. at 607, 106 S.Ct. at 3122. This conclusion is unassailable in view of the total immunity granted in the construction phase of the Mississippi River project whether or not high waters were present at the particular time.

### IV.  *Conclusion*

Finding the absolute immunity provision of the FCA applicable, we affirm the district court's dismissal of the action against the Corps of Engineers. The flotation channel in which the Mocklins' son drowned clearly contained "flood waters" within § 702c of the FCA because it was created as part of a flood control project. The district court's decision dismissing the U.S. Army Corps of Engineers from appellant's suit was correct although we find dismissal required under the broad and absolute immunity granted by the FCA.

AFFIRMED.

---

the government would be immune from in the statutory language. *See supra* note 4 and accompanying text.

**6.** Appellants urge that the injury was "wholly unrelated" to a flood control project. They argue it occurred because the flotation channels were negligently designed for navigation and not because of the water in the channels so that the government falls outside the protection of § 702c. *See Morici Corp. v. United States,* 681 F.2d 645, 648 (9th Cir.1982) (the court states the test for determining "wholly unrelated"); *Graci v. United States,* 456 F.2d 20, 27–28 (5th Cir. 1971), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 155 (1973) (government not allowed immunity under the FCA where construction of

Mississippi River Gulf Outlet allegedly allowed hurricane driven waters to flood plaintiffs' properties). Appellants have misinterpreted the meaning of "wholly unrelated." It is the operation and not the injury that must be "wholly unrelated" to flood control for the FCA not to apply.

In *Graci,* the court found no immunity under § 702c because the project that the government had undertaken had nothing to do with flood control. It was a navigation project to provide a short cut from the Gulf of Mexico to New Orleans. The case is readily distinguishable. In contrast, the project was a flood control project in *Morici.* The government was held to have absolute immunity.