Thomas SWAIN, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 90–2203–DES.

United States District Court,
D. Kansas.

June 22, 1993.

Eugene B. Ralston, Ralston, Buck & Associates, Topeka, KS, for plaintiff.

James E. Kelley, Jr., Lewis, Rice & Fingersh, Overland Park, KS, James F. Davis, Olathe, KS, for defendants.

Janice M. Karlin, Office of U.S. Atty., Kansas City, KS, for U.S.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on dual motions to dismiss filed by the United States of America, the only remaining defendant in this case (Docs. 36, 54). The government's motions, filed pursuant to Fed.R.Civ.Proc. 12(b)(1), contend that this court lacks subject matter jurisdiction on three alternative grounds: (1) the Flood Control Act of 1928, 33 U.S.C. § 702c; (2) the Oklahoma Recreational Use Act, 2 Okla.Stat.Ann. tit. 2, § 1301–315 (1981); and (3) the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a). Because the court finds that the claim is barred by the immunity provision of the Flood Control Act of 1928, plaintiff's claim is dismissed by this court for lack of subject matter jurisdiction.

### Facts

On or about July 10, 1988, the plaintiff rented a houseboat from Three Buoys Houseboat Vacations U.S.A. Ltd. (Three Buoys) for a family vacation at Lake Eufaula, a large lake located on the Canadian River in southeast Oklahoma. The houseboat was equipped with a waterslide for use by swimmers. Three Buoys recommended to the plaintiff specific areas of the lake for fishing and swimming. While the houseboat was located near the shoreline of an isolated sandy beach[1] where plaintiff had been fishing, plaintiff went down the waterslide, entering the water some six to eight feet from the rear of the houseboat.[2] His left leg struck a submerged tree or stump. The injury he sustained resulted in the amputation of his leg, for which he seeks damages.

Plaintiff originally filed this negligence lawsuit against Three Buoys and its successors, and against Eufaula Marina Corporation, which allegedly operated the beach under a lease agreement with the United States Army Corps of Engineers. Plaintiff subsequently amended the complaint to add Southwest Scuba Company, which allegedly was under contract with the Corps of Engineers to discover and remove hazardous objects from the beach area in question.

The complaint was amended a third time to add the United States as a party defendant, alleging that its operation of Lake Eufaula was negligent. Plaintiff specifically alleges that the United States was negligent (1) in failing to maintain the beach area without underwater hazards that it knew or should have known could result in serious injury and (2) in failing to warn users of the beach area that it was not free of submerged trees or stumps that could result in serious injury. All of the other defendants have been dismissed by the plaintiff from the lawsuit, with only the United States remaining as a party defendant.

[1] From the evidence submitted by the defendant in support of its motions to dismiss, the court finds that the beach where the houseboat was located at the time of the injury was not designated by the operators of the lake as a swimming beach. Furthermore, the areas officially designated as swimming beaches were marked with buoys prohibiting boats. The beach in question is located several miles from any public parking area for use by park visitors, and it cannot be easily accessed by foot. Nor was the beach area in question especially attractive to boaters as compared to other areas of the lake.

[2] In response to an interrogatory, plaintiff estimated that the water at the location of his injury was significantly over his head.

### Venue and Jurisdiction

Plaintiff resides in Baldwin, Kansas; hence venue is proper under 28 U.S.C. § 1402(b).

Plaintiff claims jurisdiction by virtue of the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b). The government contends that it enjoys absolute immunity under the Flood Control Act, 33 U.S.C. § 702c, and the Oklahoma Recreational Use Act, 2 Okla.Stat.Ann. § 1301–315 (1981). In addition, the defendant challenges the plaintiff's assertion of jurisdiction on the basis of the discretionary function exception to the FTCA.

■■■ Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction may take two forms. A facial attack on the complaint's allegations as to subject matter jurisdiction simply questions the sufficiency of the pleading. In considering such a facial challenge, the court must accept the allegations in the complaint as true. On the other hand, a factual attack on subject matter jurisdiction challenges the facts on which jurisdiction depends, and the court may not presume the truthfulness of the complaint's factual allegations. In considering a factual challenge, the trial court has broad discretion to consider evidence beyond the complaint in order to determine the jurisdictional issue. *See, e.g., Ohio National Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990); *Menchaca v. Chrysler Corp.*, 613 F.2d 507, 511 (5th Cir.1980); *see also* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, at 211–13 (1990).

In this case, the defendant does not mount a mere facial attack on the complaint, but rather challenges the existence of subject matter jurisdiction in fact. *See Menchaca*, 613 F.2d at 511. Consequently, the court may properly consider the evidentiary materials submitted by the parties for purposes of resolving the jurisdictional issue.

### Flood Control Act of 1928

■■ Defendant first argues that the plaintiff's claim is barred by the immunity provision of the Flood Control Act of 1928, which simply reads, "No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place...." 33 U.S.C. § 702c, ¶ 2, cl. 1.

In *United States v. James*, 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986), the Supreme Court construed § 702c of the Flood Control Act to bar personal injury claims by recreational users of two different federal flood control projects, noting the broad and sweeping language of the statute's immunity provision. *Id.* at 604, 106 S.Ct. at 3120; *see also Callaway v. United States*, 568 F.2d 684, 686–87 (10th Cir.1978) (noting the "broad and emphatic language of § 702c" in holding it barred plaintiff's claim for property damage from flood water during construction of flood control project). The Supreme Court held that § 702c precluded actions against the United States for personal injury caused by water released for the purpose of controlling flooding.[3]

In applying *James*, the Tenth Circuit Court of Appeals has recently held that the immunity provision applies only if the federal facility in question qualifies as a "flood control project." *See Williams v. United States*, 957 F.2d 742, 744–45 (10th Cir.1992); *see also Aetna Ins. Co. v. United States*, 628 F.2d 1201, 1203 (9th Cir.1980) (§ 702c immunity applies only if damage is caused by project related to flood control, even if not the exclusive or major purpose of the project), *cert. denied*, 450 U.S. 1025, 101 S.Ct. 1732, 68 L.Ed.2d 220 (1981). The *Williams* court held that if the facility in question is not a flood control project, the immunity provision of § 702c is inapplicable, even if the injury in question resulted from water that once flowed through upstream flood control facilities. *See Williams*, 957 F.2d at 745. The court explicitly rejected the trial court's analysis, which began with a determination of whether the water involved in the injury was floodwater. *Id.* at 744.

---

**3.** The Court carefully noted that the lower courts had expressly determined that the waters that caused the injuries were related to flood control, and were therefore "flood waters" within the ambit of the statute's immunity provision. *James*, 478 U.S. at 605 & n. 7, 610, 106 S.Ct. at 3121 & n. 7, 3123.

In the case before this court, plaintiff concedes that Lake Eufaula is a flood control project built by the Corps of Engineers pursuant to a flood control plan authorized by the 1946 River and Harbor Act.[4] In addition to flood control, the lake provides hydroelectric power, water supply, recreation, and navigation benefits. Hence, while Lake Eufaula may be characterized as a multipurpose federal reservoir, the court assumes for purposes of the pending motion that its primary purpose is flood control, and it therefore qualifies as a flood control project.

As this court reads *James* in conjunction with the Tenth Circuit's analysis in *Williams*, the next issue for the court to determine is whether the injury was "from or by floods or flood waters at any place...." 33 U.S.C. § 702c. In this case, the area of the lake near the beach where the injury occurred was apparently flooded by backwater when Lake Eufaula was created as a result of damming the Canadian River, downstream from the site where the injury occurred. The court therefore finds that the injury at issue occurred in "flood waters" for purposes of § 702c.[5]

Once it is determined that the Flood Control Act is triggered by a qualifying flood control project and that the damage was "from or by flood or flood waters," the court must next determine whether there is a sufficient requisite nexus between flood control activities and the injuries sustained by the plaintiff. See *Williams*, 957 F.2d at 743. The Circuit Courts of Appeal that have addressed this issue in the context of recreational use of flood control facilities have adopted different approaches to this question. See *Hiersche v. United States*, — U.S. —, 112 S.Ct. 1304, 117 L.Ed.2d 525 (1992) (Stevens, J.) (opinion on denial of certiorari) (the existing conflict among the courts of appeal can be more effectively resolved by Congress than by Supreme Court action). In the Tenth Circuit, the post-*James* test for a "sufficient requisite nexus" between flood control activities and the injury sustained from recreational use of the facility has not been clearly defined. However, factually similar cases from other circuits provide some guidance.

In *Boyd v. United States*, 881 F.2d 895 (10th Cir.1989), the plaintiff's decedent was struck by a boat while he was snorkeling in a well-known swimming area at a lake under the jurisdiction of the Corps of Engineers. The Tenth Circuit rejected defendant's bid for immunity under § 702c, holding that the defendant had clearly not established the

---

**4.** The Supreme Court has explicitly held that § 702c is not restricted to flood control projects authorized by the Flood Control Act of 1928. See *James*, 478 U.S. at 610 n. 10, 106 S.Ct. at 3124 n. 10, ¶ 2.

**5.** The court acknowledges language in *Williams* that appears to require that the injury occur downstream from the qualifying flood control project. See *Williams*, 957 F.2d at 745 ("[T]here must also be a nexus between the operation of th[e] project and the downstream injury to invoke immunity.") In *Williams*, the plaintiff's decedents were swept away and drowned when the defendant's upstream dam released water in the course of moving barges through the lock and dam. This court reads the language of *Williams* in the context of its particular facts, and does not construe it to limit application of the immunity provision only to injuries that occur downstream from flood control facilities. Indeed, the Supreme Court has expressly noted that § 702c applies to water impounded behind a federal dam. See *United States v. James*, 478 U.S. at 605, 106 S.Ct. at 3121 ("It is thus clear from § 702c's plain language that the terms "flood" and "flood waters" apply to all waters

contained in or carried through a federal flood control project for purposes of or related to flood control, as well as to waters that such projects cannot control.") (Emphasis added.) Other courts have also so held. See, e.g., *Fryman v. United States*, 901 F.2d 79, 80 (7th Cir.) (lake created as a result of flood control project qualified as "floods or flood waters"), *cert. denied*, 498 U.S. 920, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990); *Pierce v. United States*, 650 F.2d 202, 204–05 (9th Cir.1981) (that damage was caused by backwaters resulting from government's impoundment of water behind flood control dam, rather than release of flood water, does not preclude immunity under § 702c); *Taylor v. United States*, 590 F.2d 263, 266–67 (8th Cir.1979) (backwaters pushed onto plaintiffs' property upstream from dam, partly as a result of severe rainstorm, were "flood waters" within meaning of § 702c); *Kane v. Royal Ins. Co. of America*, 768 P.2d 678, 683 (Colo.1989) ("flood" as used in § 702c includes both naturally and artificially caused floods). The words "at any place" in the immunity provision itself underscore the conclusion that the statute was intended to apply to water impounded behind a dam as well as water released downstream from a dam.

requisite nexus between flood control activities and the injuries sustained by the plaintiff. The court refrained from "attempting to delineate for every conceivable situation the necessary link between flood control activities and injuries sustained at a flood control project before § 702c immunity applies....," holding simply that in that particular case the requisite nexus had not been established. *Id.* at 900. The fact that plaintiff's decedent was struck by a boat while he was snorkeling simply had nothing to do with the flood control function of the lake. *See Fryman v. United States*, 901 F.2d 79, 82 (7th Cir.), *cert. denied*, 498 U.S. 920, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990) (*Boyd* injury resulted from collision between swimmer and power-boat, which occurs on natural lakes and purely recreational artificial lakes; none of the lake's flood control activities increased probability of such a run-in).

In reaching this conclusion, the Tenth Circuit in *Boyd* expressly rejected the approach of the Ninth Circuit espoused in *McCarthy v. United States*, 850 F.2d 558, 562 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989). In the Ninth Circuit, § 702c immunity presumptively applies unless the plaintiff establishes that the damage or injury was "wholly unrelated" to a congressionally authorized flood control project. *See id.* at 563 (citing *Morici Corp. v. United States*, 681 F.2d 645, 648 (9th Cir. 1982)). The *Boyd* court criticized the Ninth Circuit's approach as essentially creating a "but for" connection between flood control activity and the injury occurring at a flood control project, holding that such a connection was too attenuated to warrant invocation of § 702c. *Boyd*, 881 F.2d at 900. The Tenth Circuit noted that the Ninth Circuit's rationale in *McCarthy* for finding the plaintiff's claim barred was based upon Ninth Circuit precedent predating the Supreme Court's decision in *James*.[6]

The Ninth Circuit's "wholly unrelated" threshold has been adopted by the Third Circuit in *Dawson v. United States*, 894 F.2d 70, 73–74 (3d Cir.1990). In *Dawson*, two boys drowned while swimming near a buoy line located approximately 180 feet from shore at a designated swimming area. The buoy lines were moved by Corps of Engineers personnel when the water level in the lake changed because of water releases through the dam. The court held that the swimmers' deaths were not wholly unrelated to flood control activities, and hence their claims were barred by § 702c. *Id.* at 73–74 (citing *McCarthy* with approval). In addition, the court held that governmental control of flood waters was a substantial factor in causing the drownings, because the plaintiffs alleged that the depth of the water at the swimming beach was unsafe and the depth of the water was partly due to releases by the Corps if Engineers for flood control purposes. *Id.* at 74.

The Seventh Circuit has adopted a different approach—whether the flood control activity increases the probability of the kind of injury suffered by the plaintiff. *See Fryman v. United States*, 901 F.2d at 82, *cited with approval in Williams*, 957 F.2d at 744. Fryman attempted a shallow dive off an island while swimming in a lake created as part of a flood control project. The island was submerged when the lake's water level was high, but when the water level was low it was a popular site for picnics. After diving off the island, Fryman's head struck a concealed hazard, which broke his neck and left him paralyzed. *Id.* at 80. The court held that flood control activities increase the probability of such injuries, because the lake level rises as flood waters enter in spring and falls as water is released in the summer and fall to maintain constant rates of flow through the rivers downstream. The fact that the shoreline of the island changes with rising and falling lake levels makes it difficult to identify places hazardous to divers, because the dangerousness of a spot depends on the level of the lake. Since the problem is "attributable in substantial part to the nature of a flood-control project," Fryman's claim was held barred by § 702c. *Id.* at 82.

---

**6.** Nevertheless, the Supreme Court in *James* cited the relevant Ninth Circuit precedent with apparent approval. *See James*, 478 U.S. at 603–04 n. 4, 106 S.Ct. at 3120 n. 4 (citing *Morici Corp. v. United States*, 681 F.2d 645, 647–48 (9th Cir.1982)).

In contrast, the Fifth Circuit has interpreted *James* so as to limit the court's inquiry to whether or not the injury occurred "from or by" "flood water" within the meaning of § 702c.[7] *See Mocklin v. Orleans Levee District*, 877 F.2d 427 (5th Cir.1989). Plaintiff's decedent drowned when he fell into the water while wading near a flotation channel that had been constructed to allow barges ready access to the construction site of a flood control project. *Id.* at 428. The court held that the flotation channel contained water related to flood control, because the channels were inescapably part of the flood control project. *Id.* at 430. The court reasoned that the water in the flotation channel contributed to the drowning because the channel created a significant drop-off in the lake. *Id.* The government was therefore immune under § 702c. *Id.*[8]

The Fourth Circuit, in a pre-*James* case, has held that if the plaintiff can prove damage as a result of a flood-control dam's operation solely as a recreational facility without relation to the operation of the dam as a flood control project, he may avoid the absolute bar of § 702c. *See Hayes v. United States*, 585 F.2d 701, 702–03 (4th Cir.1978). *Hayes* was quoted with approval by the Tenth Circuit in *Boyd*, 881 F.2d at 900. *See also United States v. James*, 478 U.S. at 605 n. 7, 106 S.Ct. at 3121 n. 7 (citing *Hayes* with apparent approval).[9]

The Eighth Circuit has adopted a "substantial factor" analysis in determining whether the government is immune from liability under § 702c. In *Zavadil v. United States*, 908 F.2d 334 (8th Cir.1990), *cert. denied*, 498 U.S. 1108, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991), the plaintiff struck a submerged concrete boat ramp when he dove from a dock on a lake formed by a Corps of Engineers dam. The court noted that one of the dam's purposes was flood control and navigation, that the water level of the lake was being monitored for flood control and

---

7. The Tenth Circuit has expressly rejected such an approach in *Williams*, 957 F.2d at 744 ("we explicitly reject the approach that the government and trial court took when they asked first and foremost whether the water involved in the injury was floodwater, either at the moment of injury or at any prior time").

8. In *Denham v. United States*, 646 F.Supp. 1021 (W.D.Tex.1986), *aff'd*, 834 F.2d 518 (5th Cir. 1987), a case decided prior to *Mocklin*, the plaintiff entered a Corps of Engineers lake in a designated swimming area to wash off an injured knee. He took a shallow dive from knee-deep water into waist-deep water, and immediately struck his head on an underwater obstruction, which the court determined was an abandoned concrete anchor. The court distinguished *James*, holding that the Flood Control Act does not bar action against the government when the plaintiff alleges an injury unconnected with the operation of the facility as a flood control project. *Id.* at 1026 (citing *Hayes v. United States*, 585 F.2d 701, 702 (4th Cir.1978)). The court determined that the plaintiff's injuries in *Denham* were allegedly due to negligent acts that were part of the management of the dam as a recreational facility, not as a flood control project. *Id.* As the court summarized its holding,

[T]he Court finds that if a Plaintiff alleges and proves an injury unconnected with the operation of a facility as a flood control project, the *James* decision will not bar suit against the United States. The cause of plaintiff's injury should be reviewed on a case by case basis to determine the relationship of the injury to the control, retention, and/or release of flood wa-

ters. As such, the Court holds that the Flood Control Act's immunity provision does not bar Robert Denham's claim against the United States.

*Id.* at 1027. Although this decision was appealed to the Fifth Circuit, the government did not raise the issue of § 702c immunity on appeal, and consequently the appellate court did not address it. This court considers the Fifth Circuit's subsequent opinion in *Mocklin* to be controlling as to that circuit's approach to § 702c immunity in the case of personal injury as a result of recreational use of a flood control facility. We note that the *Mocklin* court did not cite the lower court's published decision in *Denham*.

9. *Hayes* involved a claim for property damage caused by operation of the dam's flood gates, not personal injury. The court determined that if the property damage was caused by water released solely for recreational purposes and not in the least in aid of operation of the dam as a flood control facility, § 702c would not bar the claim. 585 F.2d at 702–03. The court therefore remanded the case for further factfinding. *Id.* at 703.

In another case claiming property damage, a sister federal district court in this circuit relied upon *Hayes* in holding that the plaintiffs had the burden of proving that their damages resulted solely from the impounding of water for purposes other than flood control, which the court noted appeared to be a heavy burden. *Pueblo de Cochiti v. United States*, 647 F.Supp. 538, 542 (D.N.M.1986).

navigation purposes at the time of the accident, and that the lake's waters were contained in a federal flood. control project. Reasoning that "governmental control of these [flood] waters was a substantial factor in causing [plaintiffs'] injuries," the court concluded that the United States was immune from liability under § 702c. *Id.* at 336.[10]

Similarly, in *Dewitt Bank & Trust Co. v. United States,* 878 F.2d 246 (8th Cir.1989), *cert. denied,* 494 U.S. 1016, 110 S.Ct. 1318, 108 L.Ed.2d 493 (1990), the Eighth Circuit held that flood control was an essential component of the multiple use project that expanded the lake where plaintiff was injured when he dove into the water from a retaining wall, striking the lake bottom. Plaintiff argued that his injuries resulted from the project's recreational operations rather than its flood control operations. The court disagreed, reasoning that the Corps of Engineers maintained the waters at a shallow level in operating the project for flood control and navigation purposes, and governmental control was therefore a substantial factor in causing his injuries. *Id.* at 247. The court therefore held that the government was immune under § 702c. *Id.*

Applying the same test in *Henderson v. United States,* 965 F.2d 1488 (8th Cir.1992), the Eighth Circuit held that § 702c did not bar a suit by the widow of a fisherman who drowned when water was released from a Corps of Engineers dam. In that case, however, the water release that caused the drowning was for the purpose of generating hydroelectric power, and the court reasoned that the dam activity at issue was related to generating electricity, not to flood control. *Id.* at 1492. Although the dam was created in part for flood control purposes, the court found that the primary purpose for its operation was to generate hydroelectric power. *Id.*

This court is of course bound by the precedent established by the Supreme Court in *James* and by the Tenth Circuit in *Callaway, Boyd* and *Williams.* The facts of this case

are clearly distinguishable from those in *James,* since the injury in this case was not caused by a release of water from the dam for flood control purposes. On the other hand, the facts are also distinguishable from those in *Boyd,* in which the injury resulted from a collision with a boat, an incident which had no connection whatsoever to the flood control aspects of the lake. In this case, however, plaintiff alleges that he was injured when he struck a submerged tree or stump. The tree or stump would have been submerged underwater as a direct result of the creation of the lake by artificial flooding of the land bordering a tributary of the Canadian River. The impoundment of water in the lake was the direct result of damming the river downstream for the purpose of flood control. Hence, unlike *Boyd,* this court cannot conclude that the cause of the injury in this case had no connection whatsoever with the flood control function of Lake Eufaula. Further, unlike the plaintiff in *Boyd,* the plaintiff in this case was injured in an area of the lake that was not officially developed and had not been designated for swimming. If the area was not designated for the recreational use to which the plaintiff put it when he was injured, it strains logic to contend that the plaintiff's injuries were solely the result of the recreational function of the facility.

Although the plaintiff has failed to show that the injury was "wholly unrelated" to the flood control function of Lake Eufaula, this court emphasizes that it does not rely on that reasoning, espoused by the Ninth Circuit but expressly rejected in *Boyd,* in holding that the plaintiff's claim is barred by § 702c. Nor does this court rely solely on its determination that the injury was "by or from" "flood waters," the approach adopted by the Fifth Circuit in *Mocklin* but rejected by the Tenth Circuit in *Williams.* Rather, this court finds that the defendant has established "the necessary link between flood control activities and injuries sustained at [the] flood control project" in order to invoke the broad immunity afforded by § 702c. *See Boyd,* 881 F.2d

**10.** In a footnote, the Eighth Circuit rejected the plaintiff/appellants' reliance on *Boyd,* noting that other circuits have repeatedly rejected its view that government operation of the dam as a recreational facility does not provide sovereign immunity under *James. See id.* at 336 n. 4.

at 900. The submerged obstacle that caused plaintiff's injury was not an abandoned concrete anchor or boat ramp, which could have been vestiges of recreational use, but rather a submerged tree or stump, the presence of which was a natural and direct result of flooding the bottomland above the dam on the Canadian River.

The plaintiff has not shown that he can prove his damage was a result of operation of the facility solely as a recreational facility, without relation to its operation as a flood control project, so as to avoid the absolute bar of § 702c. *See Hayes v. United States*, 585 F.2d at 702–03, *quoted with approval in Boyd*, 881 F.2d at 900. As in *Fryman*, this court concludes that the problem leading to the plaintiff's injury in this case, a submerged tree or stump, is attributable in substantial part to the nature of a flood-control project. *See Fryman*, 901 F.2d at 82, *cited with approval in Williams*, 957 F.2d at 744.

The Supreme Court in *James* emphasized the broad and sweeping language of the immunity provision in § 702c of the Flood Control Act of 1928. *James*, 478 U.S. at 608, 106 S.Ct. at 3122. The Tenth Circuit itself has noted the broad and emphatic language of § 702c in *Callaway v. United States*, 568 F.2d 684, 686–87 (10th Cir.1978), in the context of a claim for property damage. Given the particular facts of this case, the court holds that the plaintiff has not met his burden of establishing this court's subject matter jurisdiction by overcoming the broad immunity afforded the government for flood control activities.[11] *See, e.g., Ohio National Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir.1990) (plaintiff has burden of establishing subject matter jurisdiction);

*Majd–Pour v. Georgiana Community Hospital, Inc.*, 724 F.2d 901, 903 (11th Cir.1984) (same); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.) (same), *cert. denied*, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). Indeed, a " 'clear relinquishment of sovereign immunity [is required] to give justification for tort actions.' " *James*, 478 U.S. at 610, 106 S.Ct. at 3123 (quoting *Dalehite v. United States*, 346 U.S. 15, 31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953)).

Plaintiff does not contend in this case that discovery would establish subject matter jurisdiction. *Compare Majd–Pour v. Georgiana Community Hospital, Inc.*, 724 F.2d at 902–03 (since plaintiff argued discovery would show the existence of jurisdiction, trial court should not have dismissed without permitting plaintiff to pursue reasonable discovery to determine if he could show jurisdiction). Rather, he concedes the facts alleged by the defendant which support governmental immunity under § 702c, and simply argues that *Boyd* dictates that § 702c does not preclude this suit. However, as this court interprets and applies *Boyd*, we conclude that the facts of this case establish the requisite nexus under *Boyd* to invoke the broad immunity Congress afforded the government from liability associated with flood control projects.

Since plaintiff's claims are barred by 33 U.S.C. § 702c, it is unnecessary for the court to address the defendant's challenge based on the discretionary function exception to the Federal Tort Claims Act.[12] *See Callaway v. United States*, 568 F.2d at 686. Nor is it necessary to address the defendant's chal-

---

**11.** The plaintiff's claim that the government failed to warn him about the possibility of submerged trees or stumps is also barred by § 702c. *See, e.g., James*, 478 U.S. at 610, 106 S.Ct. at 3123 (negligent failure to convey warnings is part of management of flood control project); *Dewitt Bank & Trust*, 878 F.2d at 247 (same); *McCarthy v. United States*, 850 F.2d at 563 (same).

**12.** Although the court does not reach the issue, we note that the Tenth Circuit appears to have interpreted the discretionary function exception so as to bar plaintiff's claim against the United States for negligent failure to clear the lake of

underwater obstructions, but not necessarily his claim for failure to warn swimmers about such obstructions. *See Boyd v. United States*, 881 F.2d at 897; *Smith v. United States*, 546 F.2d 872, 876 (10th Cir.1976) (decision as to posting of warning signs must be judged separately from decision to leave area undeveloped); *see also Kiehn v. United States*, 984 F.2d 1100, 1103 (10th Cir. 1993) (in determining whether a failure to warn claim is barred by the discretionary function exception, the court must determine whether the government's failure to warn was part of a policy decision).

lenge based upon the Oklahoma Recreational Use Act.[13]

**IT IS BY THE COURT THEREFORE ORDERED** that the defendant's motion to dismiss (Doc. 36) is hereby granted.

**IT IS FURTHER ORDERED** that the defendant's second motion to dismiss on the basis of the discretionary function exception to the Federal Tort Claims Act (Doc. 54) is moot.

**IT IS FURTHER ORDERED** that plaintiff's claim is hereby dismissed for lack of subject matter jurisdiction pursuant to 33 U.S.C. § 702c.

---

**13.** The Oklahoma Supreme Court has recently interpreted the Oklahoma Recreational Use Act to preclude immunity under that statute if the Corps of Engineers receives any revenue from commercial activities in any part of the park area. *See Boyd v. United States,* 830 P.2d 577, 580 (Okla.1992). Since the plaintiff alleges that the Corps of Engineers generates revenue from commercial activities at Lake Eufaula, and the evidence submitted by the defendant corroborates this allegation, the court believes it is clear that the United States may not rely on the Oklahoma statute in arguing that this action should be dismissed for lack of subject matter jurisdiction, even though the plaintiff did not pay a fee for use of the lake.